Dallas E. NICHOLS, Appellant,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Appellee.

No. S–8969.

Supreme Court of Alaska.

Aug. 11, 2000.

---

**23.** See AS 09.43.010–.180.

Donna C. Willard, Law Offices of Donna C. Willard, Anchorage, for Appellant.

Rod R. Sisson, Sisson & Knutson, P.C., Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

MATTHEWS, Chief Justice.

### I. INTRODUCTION

Dallas Nichols sued his neighbor's insurance company for intentional and negligent spoliation based on the insurance company's failure to secure critical evidence in Nichols's case against the neighbor. The superior court granted summary judgment to the insurance company, and Nichols appealed. We affirm.

### II. FACTS AND PROCEEDINGS

#### A. Facts

On September 1, 1996, Dallas Nichols was assisting his neighbor, Richard Gittlein, with roof repairs when the ladder Nichols was standing on collapsed beneath him. Nichols fell eight or nine feet, tearing a rotator cuff. It is uncontested that the ladder was "old," "beat-up" and "had a lot of cracks in it." Gittlein left the broken ladder under the deck of his house.

Two months later, on December 5, 1996, a fire heavily damaged Gittlein's house. Nichols claims that the ladder was not destroyed in the fire.[1] Shortly after the fire, on December 18, 1996, Nichols filed a claim with Gittlein's insurance company, State Farm, for his injuries suffered in the ladder accident. The claim was assigned to State Farm agent Janet Sperbeck. She contacted Gitt-

---

1. This is contested, as Gittlein claims that the ladder was destroyed in the fire.

lein on December 20th, who reported that he was not sure if he still had the ladder and that it may have been destroyed in the fire.

On January 2, 1997, Sperbeck met with Nichols for the first time. He told her that the ladder was still in existence on the property and that it should be preserved. Sperbeck went to Gittlein's premises on January 2, hoping to find him and ask about the ladder. When she arrived, she discovered that the house had been destroyed and all that was left was a shed. Sperbeck left without finding Gittlein or the ladder.

After this visit, Sperbeck wrote to Gittlein, asking whether he had found the ladder. She called him twice, without reaching him. But she did not contact the State Farm agent who was handling Gittlein's fire claim and who was in communication with Gittlein.

On January 15 Sperbeck called Nichols and spoke with Nichols's wife, Judy. Judy expressed concern that, if Sperbeck failed to collect the ladder, it would soon be too late. Sperbeck traveled to the premises on that date but did not find Gittlein there.

On January 27 Gittlein made contact with Sperbeck. He told her that he could not find the ladder and that it must have been thrown out with the fire debris.

Subsequently, in July 1997, State Farm wrote Nichols stating that its liability analysis was complete and that Gittlein was not negligent. State Farm therefore declined to make any payments under the liability coverage of its policy.

B. *Proceedings*

On August 6, 1997, Nichols filed suit against Gittlein and State Farm. Nichols alleged that Gittlein was liable for negligently providing a ladder for use by Nichols that Gittlein knew or should have known was defective and unsafe for use. Nichols also alleged that Gittlein and State Farm "acted negligently, intentionally or recklessly in failing to preserve the ladder." These claims for intentional and negligent spoliation were the only claims alleged against State Farm.

After some discovery was conducted, State Farm moved for summary judgment. Initially, its motion was based on an assertion that the ladder was destroyed in the December 5 fire, which occurred before State Farm had any notice of a possible claim by Nichols. Nichols pointed out that his sworn answer to an interrogatory attested to the existence of the ladder after the fire and that there was a genuine issue of material fact on this point.

State Farm then expanded the grounds for its motion. Filing a new affidavit from Janet Sperbeck detailing her activities in the case, State Farm argued that Sperbeck committed no acts of spoliation and that, as State Farm's agent, she had fulfilled State Farm's duty concerning the ladder.

After additional discovery, Nichols filed a supplemental opposition to State Farm's summary judgment motion. Nichols opposed the motion on two grounds: (1) that it was not ripe because of the pendency of Nichols's motion to compel various documents relating to State Farm's investigation of the case; and (2) that the ladder was not destroyed in the fire and that "State Farm had one full month to locate and preserve the ladder but it made no attempt to do so."

State Farm filed a supplemental reply in support of its motion for summary judgment. In it, State Farm noted that Nichols's claim had "apparently, evolved into a claim that State Farm negligently failed to locate the ladder, as opposed to a claim that it spoliated the ladder." It argued that this is essentially a claim for negligent investigation and that an insurer owes no duty of reasonable investigation to a claimant. State Farm cited *O.K. Lumber Co. v. Providence Washington Insurance Co.*[2] for this proposition and sought summary judgment on this basis.

State Farm also argued that Alaska does not recognize negligent spoliation as a separate tort and that there was no evidence that State Farm had intentionally spoliated the ladder.

The superior court granted summary judgment to State Farm. In relevant part, the superior court wrote:

2. 759 P.2d 523 (Alaska 1988).

State Farm owed no duty to Nichols to locate or preserve the ladder. Without a duty, a negligence claim is barred.

In *O.K. Lumber v. Providence Washington Ins.* an injured claimant claimed damages against the insurer for the insurer's negligent investigation and adjustment of the claim. 759 P.2d 523 (Alaska 1988). *O.K. Lumber* held that an insurer owes no such duty to the claimant. *Id.* In the same manner, State Farm owes no duty to Nichols.

A week after the superior court granted summary judgment to State Farm, the court granted Nichols's motion to compel against State Farm. The court ordered State Farm to produce Nichols's claim file, Gittlein's fire claim file, and the entire underwriting file.

State Farm did not respond to the order. Instead, Gittlein produced all of the requested documents with the exception of Nichols's file. Gittlein redacted portions of the file that related to the insurance adjuster's assessment of Gittlein's liability and Nichols's comparative liability. He then moved for a protective order to preserve those redactions.

On December 7, 1998, the superior court entered final judgment for State Farm and awarded State Farm twenty percent of its attorney fees, for a total of $4,000, under Civil Rule 82(b)(2).[3]

After the entry of final judgment, on December 23, 1998, the superior court reviewed Gittlein's redactions in camera. The court granted Gittlein's motion for a protective order and held that the redacted portions were "irrelevant and prejudicial."

Nichols appeals the grant of summary judgment, the issuance of the protective order, and the award of attorney's fees.

## III. STANDARD OF REVIEW

 We review a grant of summary judgment de novo.[4] Drawing all reasonable inferences in favor of the nonmoving party, we will uphold summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[5]

 We review discovery rulings for abuse of discretion.[6] "We will find an abuse of discretion when we are left with a definite and firm conviction after reviewing the whole record that the trial court erred in its ruling."[7]

 Attorney's fee awards are similarly reviewed for abuse of discretion.[8] We will reverse an award of attorney's fees only if the award is "arbitrary, capricious, manifestly unreasonable, or stems from improper motive."[9]

## IV. DISCUSSION

### A. Spoliation

In *Hazen v. Municipality of Anchorage*[10] we recognized that acts of intentional spoliation of evidence can give rise to independent tort claims for intentional interference with a prospective civil action. In *Hazen*, one of the alleged spoliators, Bailey, was not a party to the original tort lawsuit against the Municipality of Anchorage.[11] *Hazen* permitted an intentional spoliation tort claim to be maintained against Bailey and against the Municipality. It therefore recognized that intentional spoliation claims can be made against

---

3. The court found that there was no just reason to delay entry of a final judgment and expressly directed entry of judgment as allowed by Civil Rule 54(b) in cases where a judgment does not apply to all claims or parties.

4. *See Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1200 (Alaska 1998).

5. *See Shade v. CO & Anglos Alaska Serv. Corp.*, 901 P.2d 434, 437 (Alaska 1995).

6. *See Christensen v. NCH Corp.*, 956 P.2d 468, 473 (Alaska 1998).

7. *Id.*

8. *See Jones v. Jones*, 925 P.2d 1339, 1340 (Alaska 1996).

9. *Id.* (quoting *Zimin v. Zimin*, 837 P.2d 118, 124 (Alaska 1992)).

10. 718 P.2d 456, 463 (Alaska 1986).

11. *See id.* at 459.

parties to the original action (called "first-party spoliators") and non-parties to the original action (called "third-party spoliators").

We have not recognized an independent tort for negligent spoliation of evidence. In *Sweet v. Sisters of Providence in Washington* [12] we were presented with a first-party negligent spoliation claim. The plaintiffs alleged that a hospital had negligently lost medical records that were critical to plaintiffs' medical malpractice claim against the hospital and others. [13] We held that the jury should be instructed that the loss of the medical records raises a rebuttable presumption of negligence on the part of the hospital. [14] This shifts the burden of proof to the hospital to prove that it was not negligent. [15] We noted that the court should first determine whether the missing evidence "sufficiently hinders plaintiff's ability to proceed." [16] If the spoliated evidence is important enough to meet this standard then the rebuttable presumption/burden-shifting remedy can be applied.

We concluded in *Sweet* that the burden-shifting remedy was a sufficient response to the problem of missing evidence under the circumstances presented. [17] We did not decide whether negligent spoliation could ever form the basis for an independent suit and implicitly recognized that in cases of third-party spoliation the burden-shifting remedy might not be effective: "We need not decide in this case whether the recognition of a separate tort of negligent destruction of evidence would ever be appropriate, for example, against a third party not associated with the underlying lawsuit." [18]

### 1. Nichols's claim for negligent spoliation cannot be maintained separately against State Farm.

Nichols ignores an important aspect of his claim for negligent spoliation by failing to focus on whether it is a claim of first-party or third-party spoliation. State Farm argues that this is a first-party claim. [19] We agree. State Farm is not, to use the language of *Sweet*, a "third party not associated with the underlying lawsuit." [20] Instead, State Farm has assumed Gittlein's defense. We see no reason why the *Sweet* remedy would not be a sufficient response to negligent spoliation of the ladder, whether by Gittlein or State Farm, assuming the ladder's disappearance was found to be a sufficient hindrance to the prosecution of Nichols's claim. If the absence of the ladder were found not to be a sufficient hindrance, then no tort remedy would be needed. Thus here, as in *Sweet*, we conclude that a separate tort remedy for negligent spoliation may not be maintained.

For this reason, we uphold summary judgment dismissing the negligent spoliation claim against State Farm. In reaching this conclusion, we do not reach the issue as to whether Gittlein, and State Farm as Gittlein's agent, had an obligation—potentially enforceable with a *Sweet* remedy—to preserve the ladder once Nichols's claim was known. We view the question before us as whether a separate claim for negligent spoliation can be maintained against State Farm. That question we answer in the negative based on *Sweet*. Further questions as to what a defendant should do with respect to important evidence in the defendant's posses-

---

12. 895 P.2d 484 (Alaska 1995).

13. *See id.* at 487.

14. *See id.* at 491–92.

15. *See id.* at 492.

16. *Id.* at 491 (citation omitted).

17. *See id.*

18. *Id.*

19. State Farm argues:

There is no reason why burden shifting should not be applied where the evidence is lost or destroyed by the investigator (insurance agent, lawyer, paralegal, forensic expert, etc.) of a party as opposed to being lost or destroyed by the party himself. If a plaintiff's lawyer loses or destroys evidence, burden shifting can be applied to the plaintiff and there is no need to create a cause of action allowing defendants to sue plaintiff's lawyer. The same can be said when the tables are turned and evidence is destroyed or lost by a defendant's insurance adjuster.

20. *Sweet*, 895 P.2d at 493.

sion or control once a claim is asserted are beyond the scope of this appeal.

### 2. State Farm was entitled to summary judgment of the claims of reckless or intentional spoliation.

 Nichols has also pled intentional and reckless spoliation. But Nichols offers no evidence to support this allegation. In fact, at his deposition he was asked what facts would indicate that State Farm acted negligently, intentionally, or recklessly in failing to preserve the ladder. He admitted he knew of none and opined only that State Farm acted negligently. Accordingly, we conclude that Nichols's claims based on intentional or reckless conduct were properly dismissed.

### B. Nichols's Appeal of the Protective Order Is Untimely.

Nichols argues that the trial court should have required State Farm to obey the October motion to compel. But this issue is now moot because State Farm is no longer a party to the case and the materials requested would not have undercut State Farm's entitlement to summary judgment.

Nichols also argues that the trial court should not have granted the protective order. But this point is not properly part of this appeal. The protective order was granted to Gittlein, not State Farm. Gittlein is not a party to this appeal. Nor has there been any final judgment in Nichols's case against Gittlein. Therefore, we decline to rule on the trial court's granting of the protective order.

### C. The Trial Court Did Not Err in Its Award of Attorney's Fees.

 Under Civil Rule 82(b) a trial court is obligated to award the prevailing party in a suit resolved before trial twenty percent of its actual attorney's fees. If the trial court deviates from this formula, it must provide a written explanation for doing so.[21]

Here, the trial court's award was consistent with Rule 82(b)(2) and was supported by numerous affidavits and billing records. Nichols appeals the award, claiming that State Farm's billing was excessive and that the trial court should have given reasons for its finding that the billing was not excessive.

 But the trial court is under no obligation to give reasons for an award that complies with the percentages expressed in Rule 82(b)(2). We will reverse an award of attorney's fees only if the award is "arbitrary, capricious, manifestly unreasonable, or stems from improper motive."[22] Nichols has not made a sufficient showing to support reversal under this standard.

## V. CONCLUSION

AFFIRMED.

---

**21.** *See* Alaska R. Civ. P. 82(b)(3) ("If the court varies an award, the court shall explain the reasons for the variation.").

**22.** *Jones v. Jones,* 925 P.2d 1339, 1340 (Alaska 1996) (quoting *Zimin v. Zimin,* 837 P.2d 118, 124 (Alaska 1992)).