Jared ARMSTRONG, Appellant,

v.

James Matthew TANAKA, Appellee.

No. S–13311.

Supreme Court of Alaska.

March 19, 2010.

Rehearing Denied April 28, 2010.

Jared Armstrong, pro se, Anchorage.

Ann Resch and Richard L. Waller, Brown, Waller & Gibbs, P.C., Anchorage, and David H. Shoup, Tindall, Bennett & Shoup, P.C., Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

After Jared Armstrong gave James Tanaka's fourteen-year-old son a book entitled "Satan Burger," Tanaka reported Armstrong to the police. The police obtained a search warrant for Armstrong's house and arrested Armstrong at his workplace. The State of Alaska eventually charged Armstrong with several counts of felony possession and distribution of child pornography.

After his arrest, but before the State filed its charges, Armstrong initiated a defamation suit against Tanaka that is the subject of this appeal. To defend himself against Armstrong's defamation allegations, Tanaka sought discovery, including an opportunity to depose Armstrong. At his deposition, Armstrong refused to answer a number of questions on Fifth Amendment grounds. The superior court repeatedly directed Armstrong to appear at a second deposition, but Armstrong refused to do so. Armstrong then moved to stay civil proceedings pending the resolution of his criminal case, but the superior court denied the motion. Armstrong continued to refuse to appear at the rescheduled deposition, and as a sanction for failing to comply with discovery, the superior court dismissed Armstrong's lawsuit and awarded attorney's fees to Tanaka.

We conclude that when the plaintiff in a civil case is simultaneously defending himself in a related criminal case, and he moves to stay civil proceedings to protect his right against self-incrimination, the trial court must balance both parties' interests to determine whether the requested stay of the civil proceedings is appropriate. Here, the superior court took care to try to protect Armstrong's rights by agreeing to be available during the deposition to rule on any objections that Armstrong had to Tanaka's questions. But the superior court had already instructed Armstrong that he had to answer certain of Tanaka's questions at the deposition—including the "[i]dentity of intended recipient of encrypted Internet postings . . . , creation of the message[s], the source of the code, and the means of deciphering [them]"—that could be interpreted to implicate Armstrong's right not to incriminate himself. And without the benefit of the rule we adopt today, the superior court did not expressly conduct a balancing of both parties' interests before denying Armstrong's motion to stay. We therefore remand the case for a determination whether a stay is appropriate, using the balancing test articulated in this opinion.

## II. FACTS AND PROCEEDINGS

In fall 2005 James Tanaka reported to the Anchorage Police Department (APD) that Jared Armstrong had given Tanaka's fourteen-year-old son a copy of an explicitly sexual and violent book. The APD obtained a search warrant for Armstrong's residence and arrested him at his workplace; the Municipality of Anchorage charged him with dissemination of indecent materials to a minor. Less than four months later, in March 2006, the Municipality dismissed those charges.

In June 2006 Armstrong initiated the defamation suit against Tanaka that is the subject of this appeal. In January 2007 Armstrong was first deposed by Tanaka and, in response to a number of deposition questions, invoked his Fifth Amendment privilege. Also at that time, Armstrong began seeking documents from the APD, and the superior court directed him to "explain the relevance and materiality of each request for information from [the] APD." In early April, Tanaka moved to compel Armstrong to answer the questions at a continuation of the deposition. In July 2007, after conducting a forensic examination of a computer seized from Armstrong's residence, the State of Alaska charged Armstrong with three counts of possession of child pornography and one count of distribution of child pornography. In an order dated August 13, 2007, Superior Court Judge Michael Spaan, to whom the civil case had been reassigned,[1] granted Tanaka's motion to compel. The order directed Armstrong to answer questions about his addresses, work history, and education, as well as questions that appear to overlap with his criminal case, such as the "[i]dentity of intended recipient of encrypted Internet postings . . . , creation of the message[s], the source of the code, and the means of deciphering [them]." The continuation of Armstrong's deposition was scheduled for September 27, 2007.

A few days before the scheduled deposition, Armstrong filed a motion for reconsideration and dropped off a letter informing Tanaka's lawyers that he would not appear at the September 27 deposition. At this juncture, Armstrong alleged collusion between Tanaka and the APD. Tanaka's attorney's time records reflect some communications between Tanaka's attorneys and the APD. Tanaka filed a motion to require Armstrong to show cause why he should not be held in contempt. The superior court denied Armstrong's motion for reconsideration.

Armstrong then filed his first motion to stay proceedings pending removal of the action to federal court and dropped off a second letter informing Tanaka's lawyers that he would not appear at the continuation of his deposition rescheduled for October 18. The superior court granted Tanaka's show cause motion and denied Armstrong's motion to stay.

On November 5, 2007, Armstrong filed, in a single document, a motion asking the court to reconsider its grant of the show cause motion and a second motion to stay civil proceedings. In this second request for a stay, Armstrong argued that Tanaka's questions were designed to "falsely implicate [him] in criminal acts" and requested a stay pending resolution of the State's case against him. The superior court denied that motion as well.

On November 27, 2007, the superior court held a show cause hearing. Tanaka requested that the superior court reiterate its order compelling Armstrong to answer deposition questions and impose costs on Armstrong for twice failing to appear. Armstrong argued that it would be inappropriate for him to appear at a deposition while defending himself in a related criminal case. Emphasizing that Armstrong had the right to invoke Fifth Amendment privilege if he felt answering a question would incriminate him, the superior court ordered Armstrong to appear at his deposition. Judge Spaan assured both parties he would be available telephonically on December 10, 2007, the date selected for the rescheduled deposition, to rule on any disputes about whether a question implicated Armstrong's Fifth Amendment rights. The superior court told Armstrong it would as-

---

**1.** Superior Court Judges Patrick J. McKay and Jack Smith handled the case in its early stages.

On May 7, 2007, Judge Spaan was assigned to handle the case.

sume that, up until that point, Armstrong had a "wrong but a good faith basis" for his failure to appear; nonetheless, the court indicated it would impose some costs and, if Armstrong continued not to comply with discovery, it would gradually increase the sanctions.

A few days before the rescheduled deposition, Tanaka's lawyers received a letter from Armstrong informing them that, on the advice of counsel, he would not appear at the December 10 deposition. They also received a letter from Armstrong's criminal lawyer, informing them that Armstrong would not appear at the deposition and stating that he was "simply protecting [his] client's interest in regards to his criminal case." The interest referred to by Armstrong's lawyer related to Armstrong's stated concern that attending the deposition might violate his bail condition.[2] Tanaka filed a second motion to require Armstrong to show cause.

The superior court denied Tanaka's show cause motion but stipulated that Armstrong "will be given one additional opportunity to appear for the continuation of his deposition" and, failing that, the court would resort to a litigation-ending sanction. On January 24, 2008, the date of the final rescheduled deposition, Armstrong did not appear. Tanaka moved to establish his denials and affirmative defenses and to dismiss Armstrong's claims with prejudice.

On February 6, Superior Court Judge John Suddock, who had assumed Judge Spaan's caseload a few days earlier, found that Armstrong had not provided "a comprehensible reason why he has elected to ignore Judge Spaan's order," granted Tanaka's mo-

tion, and dismissed Armstrong's lawsuit. In its final judgment entered March 11, the superior court awarded Tanaka attorney's fees in the amount of $43,927.08. On April 8, the State dismissed its criminal charges against Armstrong without prejudice. Armstrong challenges the superior court order denying his motion to stay. He also challenges the superior court's failure to order discovery of materials held by the APD and its order granting Tanaka's motion for attorney's fees.

## III. STANDARD OF REVIEW

We review a trial court's ruling on a motion to stay for abuse of discretion.[3] We will find abuse of discretion only where this court is "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[4] We use our independent judgment to determine whether a trial court has applied the correct legal test.[5]

## IV. DISCUSSION

Under the Fifth Amendment of the United States Constitution, "an individual has a constitutional right to remain silent in any 'proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings'"[6] and "to suffer no penalty for such silence."[7] The United States Supreme Court has defined "penalty" broadly in this context: a penalty "is not restricted to fine or imprisonment. It means ... the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'"[8] Under the

---

2. The conditions of Armstrong's bail prohibited him from having any contact with potential witnesses. Armstrong stated that Tanaka, Tanaka's lawyer, and Tanaka's private investigator would be witnesses in his criminal case.

3. *See Stone v. Int'l Marine Carriers, Inc.*, 918 P.2d 551, 554 (Alaska 1996) (applying the abuse of discretion standard to the lower court's ruling on a motion to stay discovery).

4. *Clemensen v. Providence Alaska Med. Ctr.*, 203 P.3d 1148, 1151 (Alaska 2009) (quoting *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 592 (Alaska 2007)).

5. *Cent. Bering Sea Fishermen's Ass'n v. Anderson*, 54 P.3d 271, 277 (Alaska 2002).

6. *McCracken v. Corey*, 612 P.2d 990, 993 (Alaska 1980) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973)) (internal punctuation omitted).

7. *Spevack v. Klein*, 385 U.S. 511, 514, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (internal punctuation omitted) (quoting *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)).

8. *Spevack*, 385 U.S. at 515, 87 S.Ct. 625.

due process clause of the Alaska Constitution, Alaskans have a general right of access to the courts.[9] Thus, where an individual who initiates a civil lawsuit for damages is simultaneously defending himself against related criminal charges, proceedings must adequately protect the individual's overlapping rights to access the courts and assert the Fifth Amendment privilege without penalty. Along these lines, Armstrong argues that the superior court presiding over his civil case should have granted his motion to stay proceedings pending resolution of his criminal case. Having filed criminal charges against Armstrong, the State of Alaska was obligated to move his criminal case forward in an expeditious manner.[10]

## A. Related, Concurrent Civil and Criminal Proceedings in Alaska

We have never before had occasion to address the precise question raised by this case: whether a *plaintiff* in a civil lawsuit who is simultaneously defending himself in a related criminal case and who seeks a stay of civil proceedings to protect his right against self-incrimination is entitled to the requested stay of civil proceedings. We have, however, decided cases in which the *defendant* in a civil proceeding seeks to stay those proceedings pending the resolution of his criminal case.

In *McCracken v. Corey*, a parolee faced, for the same alleged conduct, a parole revocation hearing and a criminal trial.[11] We noted that holding the revocation hearing before the criminal trial could "disrupt[ ] the maintenance of a 'fair state-individual balance' at the criminal trial, where the burden of proving the guilt of the defendant must be shouldered entirely by the state."[12] In addi-

tion, forcing the parolee to choose between his right to defend himself at the parole revocation hearing and his right against self-incrimination with respect to his criminal trial posed an unfair dilemma which "runs counter to our historic aversion to cruelty reflected in the privilege against self-incrimination."[13] We declined to require a stay of the revocation hearing but ruled that evidence and testimony presented by the parolee at the hearing, as well as fruits of any evidence and testimony presented, would be inadmissible by the State in the criminal proceeding.[14]

In *Resek v. State*, an individual faced an in rem forfeiture proceeding and a criminal trial for the same alleged conduct.[15] We ruled that, under those circumstances, a court should stay civil proceedings "in the absence of strong countervailing circumstances."[16] Distinguishing *McCracken*, we held that forfeiture proceedings present a greater danger of self-incrimination than parole revocation hearings because the defendant in a forfeiture proceeding carries the burden of proof.[17] We added that "when one is unaided by an attorney and therefore not even aware of the scope of his privilege against self-incrimination, the problems are obviously aggravated."[18]

*McCracken* and *Resek* implicated an individual's right to defend himself against the government's effort to take his liberty or property within the context of a civil action; this case implicates an individual's right as a plaintiff to access the courts. In Alaska, the right to seek redress, like the right to defend oneself, is constitutionally protected. As we have held, a personal injury claim is a form of property, and depriva-

---

9. *See Bush v. Reid*, 516 P.2d 1215, 1219 (Alaska 1973) (holding that a statute denying parolees access to the judicial process deprives them of property rights in violation of the due process clause of the Alaska Constitution).

10. *See* Alaska R.Crim. P. 45.

11. 612 P.2d at 991.

12. *Id.* at 996 (quoting *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964)).

13. *Id.* (quoting *People v. Coleman*, 13 Cal.3d 867, 120 Cal.Rptr. 384, 533 P.2d 1024, 1034 (1975)).

14. *Id.* at 998.

15. 706 P.2d 288 (Alaska 1985).

16. *Id.* at 294–95.

17. *Id.* at 294.

18. *Id.*

tion of access to the courts denies an individual "the ability to reduce the claim to a money judgment ... or otherwise convert it into property of an appreciable value and liquid nature." [19]

In this case, as in *McCracken* and *Resek*, the proceedings must therefore protect both an individual's Fifth Amendment and due process rights. We recognize, however, an important distinction between this case and *McCracken* and *Resek*: these earlier decisions involved civil and criminal proceedings initiated and controlled by the State of Alaska, against which McCracken and Resek defended themselves. Here, Armstrong is a plaintiff in a lawsuit, and we must consider the rights of an adverse party who is a private individual.

### B. A Balancing Test that Weighs the Parties' Interests Is the Proper Analysis in This Case.

■ This case concerns whether a plaintiff in a civil lawsuit who is the defendant in a related criminal case is entitled to a stay of civil proceedings pending resolution of the criminal case. The Fifth Circuit addressed this precise issue in *Wehling v. Columbia Broadcasting System*.[20] In that case, Wehling filed a libel action after a CBS Evening News broadcast claimed he had committed fraud.[21] During pretrial discovery, Wehling, who had been the subject of a related grand jury investigation, invoked the Fifth Amend-

ment.[22] The district court ordered Wehling to answer deposition questions or have his suit dismissed, denied Wehling's motion to stay,[23] and again ordered him to submit to discovery.[24] When Wehling did not comply, the district court dismissed his case with prejudice; on appeal, the Fifth Circuit held that the trial court abused its discretion.[25]

The Fifth Circuit was explicit in defining the issue: "The question here ... is not whether Wehling had a right to invoke the constitutional privilege against self-incrimination, which he did, but what effect the assertion of this privilege would have on his libel action against CBS." [26] The Fifth Amendment privilege protects "the right of a person to remain silent ... [and] to suffer no penalty ... for such silence." [27]

Just as a plaintiff should not be penalized for invoking his Fifth Amendment privilege, a defendant in a civil action should not be prejudiced by the plaintiff's invocation of that privilege.[28] The Fifth Circuit recognized that defendant CBS also held important rights and should not, by plaintiff Wehling's assertion of privilege, be disadvantaged in defending its case.[29]

Thus, the Fifth Circuit concluded that the district court should have considered and balanced the parties' competing interests in determining the effect that Wehling's assertion of Fifth Amendment privilege would

19. *Bush v. Reid,* 516 P.2d 1215, 1219 (Alaska 1973); *see also Sands ex rel. Sands v. Green,* 156 P.3d 1130, 1134 (Alaska 2007) (holding that due process protection is greater under the Alaska Constitution than under the federal constitution).

20. 608 F.2d 1084 (5th Cir.1980).

21. *Id.* at 1086.

22. *Id.*

23. The motion itself requested relief short of dismissing the case, without specifying what kind of relief, but the memorandum accompanying the motion requested a stay, and the Fifth Circuit seems to treat the motion as a stay request. *Id.* at n. 3, 1087 ("Wehling asks only that discovery be stayed until all threat of criminal liability has ended.").

24. *Id.*

25. *Id.* at 1087–89.

26. *Id.* at 1087.

27. *Spevack v. Klein,* 385 U.S. 511, 514, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (quoting *Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)).

28. *Wehling,* 608 F.2d at 1087 ("While it may be true that an individual should suffer no penalty for the assertion of a constitutional right, neither should third parties sued by that individual who have no apparent interest in the criminal prosecution, be placed at a disadvantage thereby.") (citing *Jones v. B.C. Christopher & Co.,* 466 F.Supp. 213, 227 (D.Kan.1979)).

29. *Id.* ("CBS should not be required to defend against a party who refuses to reveal the very information which might absolve defendant of all liability.").

have on his lawsuit.[30] Emphasizing that "a civil plaintiff has no *absolute* right to both his silence and his lawsuit," the Fifth Circuit concluded that dismissal would be appropriate only where less severe remedies would be ineffective in preventing unfairness to the civil defendant.[31] Citing *Wehling*, at least three courts have adopted balancing tests in similar situations.[32]

 Today we too adopt a balancing test. We hold that where an individual threatened by criminal charges brings a civil action, and either party to the civil action requests a stay of civil proceedings pending resolution of the related criminal proceedings, a trial court must balance the parties' interests to determine whether a stay is appropriate.[33] At a minimum, this means balancing the plaintiff's right to assert Fifth Amendment privilege without penalty and his right of access to the courts against the defendant's right to defend himself against the plaintiff's allegations and interest in timely resolution of the proceedings against him. Due to the importance of the rights involved, the superior court must expressly consider all parties' interests before ruling on a motion to stay. Consistent with the rules we set out in *McCracken* and *Resek*, this balancing is meant to safeguard a criminal defendant's right against self-incrimination and his

right to due process, but not at the cost of a civil defendant's right to defend himself.

In this case, Judge Spaan displayed sensitivity to Armstrong's Fifth Amendment privilege by taking the extraordinary step of offering to be available by phone on the date of the rescheduled deposition to rule on any dispute over the questions posed. But the superior court had already ruled that Armstrong must answer certain questions at the deposition—including the "[i]dentity of intended recipient of encrypted Internet postings . . ., creation of the message[s], the source of the code, and the means of deciphering [them]"—that may implicate Armstrong's right not to incriminate himself. And without the benefit of the rule we adopt today, the superior court did not expressly conduct a balancing of the parties' interests before denying Armstrong's motion to stay. We therefore vacate the superior court's denial of Armstrong's motion to stay and its dismissal of Armstrong's lawsuit, and we remand to give the superior court the opportunity to apply the balancing test outlined in this opinion.

On remand, the superior court must articulate its reasons for granting or denying Armstrong's motion to stay. It should consider Armstrong's right to assert his Fifth Amendment privilege without penalty and his right of access to the courts.[34] It should also

30. *Id.* at 1088–89.

31. *Id.* (emphasis added). The Fifth Circuit emphasized that dismissal should be used only as a last resort: "When plaintiff's silence is constitutionally guaranteed, dismissal is appropriate only where other, less burdensome, remedies would be an ineffective means of preventing unfairness to defendant." *Id.* at 1088.

32. *See Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1205–06 (Fed.Cir.1987) (vacating dismissal of plaintiff corporation's case for refusal of corporation's employees and key witnesses, on Fifth Amendment grounds, to give testimony; adopting balancing test; vacating the order denying a stay of civil proceedings; and remanding for further consideration); *Ex parte Baugh*, 530 So.2d 238, 244–45 (Ala.1988) (reversing plaintiff's contempt conviction for her refusal, on Fifth Amendment grounds, to give deposition testimony where balance of the parties' interests weighed in favor of granting the plaintiff's motion to stay); *Brancaccio v. Mediplex Mgmt. of Port St. Lucie, Inc.*, 711 So.2d 1206, 1209–11 (Fla.Dist.Ct.App.1998) (reversing dismissal of

plaintiff's case for his refusal, on Fifth Amendment grounds, to divulge more than his name and birthdate during discovery).

33. In this case, the individual who initiated the civil action is also the party requesting a stay because, like the civil defendant in *Resek*, he is representing himself and could have difficulty protecting his own Fifth Amendment privilege; in other cases, it may be the individual defending against a civil action requesting a stay because he is unable to mount a defense without the discovery protected by the plaintiff's Fifth Amendment privilege. In either situation, the trial court should apply the balancing test outlined here.

34. When Armstrong raised his concerns about appearing for his deposition at the November 2007 show cause hearing, the superior court emphasized Armstrong's posture as a civil plaintiff only in the context of Tanaka's right to defend himself.

consider Tanaka's interest in timely resolution of the proceedings against him and how, if at all, a stay of civil proceedings would prejudice Tanaka's defense. While the superior court referenced Tanaka's right to defend himself against the civil defamation claim at the parties' show cause hearing, it did not discuss how a stay of proceedings would impair that right. Importantly, Tanaka's opposition to Armstrong's first motion to stay does not articulate how a stay might prejudice Tanaka, and Tanaka never filed a response to Armstrong's second motion to stay.[35] Thus, when the court denied Armstrong's motion to stay, it did not have any explanation upon which it could have relied regarding how a stay in proceedings would prejudice Tanaka's defense. When the superior court considers and balances these interests on remand, it should do so in light of the length of the proposed stay. The State has dismissed the criminal charges against Armstrong *without* prejudice, and it is unclear from the record before us whether there is any realistic possibility that new criminal charges might be filed.

Finally, if after applying this balancing test the superior court finds that a stay of civil proceedings is not appropriate, the superior court is free to fashion another remedy to achieve the proper balance, such as requiring Tanaka to pose questions in writing and ruling on all objections before a rescheduled deposition or conducting the deposition on the record in the courtroom.

 Because we vacate dismissal of this case, we also vacate the superior court's award of attorney's fees and do not reach the issue of whether that award was proper.[36]

We do not review Armstrong's request for discovery from the APD because the superior court does not appear to have issued a final order granting or denying Armstrong's request and because the superior court will have the opportunity to fully consider the request on remand.

## V. CONCLUSION

For the foregoing reasons, we VACATE the superior court's denial of Armstrong's motion to stay, VACATE dismissal of the case, VACATE the award of attorney's fees, and REMAND to the superior court for proceedings consistent with this opinion.

EASTAUGH, Justice, not participating.

---

**35.** This is probably because Armstrong folded his second motion to stay proceedings pending resolution of his criminal case into the document that also contained his motion to reconsider the court's order to show cause; one week after it was filed, the superior court denied both motions.

**36.** We do note that it appears from the record that the superior court awarded Tanaka attorney's fees under both Civil Rule 68 and Civil Rule 82. We have previously held that attorney's fees cannot be awarded in the same action under both of these rules. *See Prentzel v. State of Alaska, Dep't of Pub. Safety*, 169 P.3d 573, 594–95 (Alaska 2007); *Ellison v. Plumbers & Steam Fitters Union, Local 375*, 118 P.3d 1070, 1078 (Alaska 2005). We also note that in briefs before the superior court and this court, Armstrong raised the question whether Tanaka's offer of judgment

was valid. We have since decided *Beal v. McGuire*, 216 P.3d 1154, 1177–78 (Alaska 2009) (holding one-dollar offer of judgment invalid and reversing award of attorney's fees). Finally, Armstrong challenged certain of Tanaka's fees as unnecessary or duplicative. A trial court should consider objections regarding allegedly duplicative and otherwise unreasonable attorney's fees and actually review challenged fees for reasonableness. *See Valdez Fisheries Dev. Ass'n, Inc. v. Froines*, 217 P.3d 830, 833 (Alaska 2009) (noting that "where the party against whom fees are awarded requests an itemized billing affidavit and objects to specific items in the bill as unnecessary, duplicative, or otherwise unreasonable," it is the superior court's task "to determine whether the hourly rate is reasonable, and how many of the hours of work billed were reasonably incurred").