**LAW PROJECT FOR PSYCHIATRIC RIGHTS, INC., an Alaskan non-profit corporation, Appellant,**

v.

**STATE of Alaska, et al., Appellees.**

No. S–13558.

Supreme Court of Alaska.

Oct. 1, 2010.

James B. Gottstein, Law Project for Psychiatric Rights, Inc., Anchorage, for Appellant.

Michael G. Hotchkin, Assistant Attorney General, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for Appellees.

Before: FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

## OPINION

WINFREE, Justice.

## I. INTRODUCTION

A non-profit public interest law firm filed suit in its own name against the State of Alaska seeking to establish constitutional standards that must be met before compelling minors to take psychotropic medications. The superior court granted a stay of discovery pending the State's motion to dismiss for lack of standing. The superior court then dismissed the complaint for lack of standing and later awarded the State nearly $4,000 in attorney's fees under Alaska Rule of Civil Procedure 82(b)(2). Because the superior court did not err in dismissing the lawsuit for lack of standing and did not otherwise abuse its discretion, we affirm its decisions.

## II. FACTS AND PROCEEDINGS

Law Project for Psychiatric Rights, Inc. (LPPR) is a non-profit Alaska corporation operating as a public interest law firm. LPPR's mission is "to mount a strategic litigation campaign against forced psychiatric drugging and electroshock."

In September 2008 LPPR initiated suit against the State and seven State employees in their official capacities (collectively "the State"), seeking declaratory and injunctive relief regarding children's rights in compelled psychotropic drug administration. LPPR claimed administering psychotropic medication to children without their consent constitutes involuntary medicating and "infringes upon [the children's] fundamental constitutional rights." LPPR sought a declaratory judgment that "children ... have the right not to be administered psychotropic drugs unless and until" certain standards are met. LPPR also sought to permanently enjoin the State from "authorizing or paying for" psychotropic drug administration that fails to follow the proposed standards.

After filing an answer the State moved contemporaneously for judgment on the pleadings and to stay discovery. The State argued that LPPR's complaint should be dismissed for lack of standing and observed that LPPR failed to "identify a single individual who has been harmed by the alleged violations." The State argued a stay of discovery was particularly appropriate pending the dispositive motion because the "motion raise[d] pure questions of law which discovery [was] not needed to resolve."

LPPR opposed both motions. As to standing, LPPR argued it satisfied citizen-taxpayer standing. Although LPPR conceded it did not assert interest-injury standing to sue either on its own behalf or on behalf of any individual member of the class described in its complaint, it argued the complaint could be amended to include a named plaintiff. LPPR explained it was a proper litigant because affected children and parents were unlikely to file suit, due in part to lack of resources. LPPR also claimed that an individual litigant might be unable to obtain injunctive relief. As to the discovery stay, LPPR argued the motion for judgment on the pleadings was "not likely to dispose of the entire case" and therefore discovery should proceed. LPPR outlined two discovery objectives, neither of which suggested LPPR required discovery to address the State's standing argument.

The superior court granted both of the State's motions. First the court stayed discovery pending its decision on the motion for judgment on the pleadings. The court later found LPPR had not asserted interest-injury standing and had failed to establish citizen-taxpayer standing. The court found that, despite raising questions of public significance, LPPR was not an appropriate litigant to bring the action and stated that "the affected children, their parents or guardians[,] or even the state would make a more appropriate plaintiff." The court further concluded that LPPR "failed to establish any parent or guardian with a legitimate grievance on behalf of their juvenile or child has declined to sue" or that "any legitimate claim has gone unpursued." Concluding that LPPR lacked standing to litigate the issues, the court dismissed the complaint.

The State then moved for partial attorney's fees under Rule 82(b)(2).[1] LPPR opposed the motion, citing Rule 82(b)(3)(I)[2] and asserting that "[a]ny award is likely to deter litigants from the voluntary use of the courts." The court granted the State's motion and, adhering to Rule 82(b)(2), awarded the State $3,876 in attorney's fees.

LPPR appeals the superior court's decisions to dismiss for lack of standing, stay discovery, and award the State attorney's fees.

## III. STANDARD OF REVIEW

■ We review de novo whether a party has standing to sue, as the issue raises a

---

1. Rule 82(b)(2) provides in pertinent part: "In cases in which the prevailing party recovers no money judgment, the court ... shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred."

2. Rule 82(b)(3)(I) provides in pertinent part:

The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if ... the court determines a variation is warranted [considering] the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts.

question of law.[3] We review a superior court's ruling on a motion to stay discovery for abuse of discretion.[4] Abuse of discretion occurs "when we are left with a definite and firm conviction after reviewing the whole record that the [superior] court erred in its ruling."[5] We also review attorney's fees awards for abuse of discretion.[6] We will reverse an attorney's fees award only if it is "arbitrary, capricious, manifestly unreasonable, or stems from an improper motive."[7]

## IV. DISCUSSION

### A. Standing

 "Standing is a 'rule of judicial self-restraint based on the principle that courts should not resolve abstract questions or issue advisory opinions.' "[8] The fundamental question raised by an objection to standing is whether the litigant is a proper party to seek adjudication of a particular issue.[9] Although we favor access to judicial forums, a basic requirement of standing is adversity of interests.[10] We recognize two general types of standing sufficient to meet the adversity requirement—interest-injury standing and citizen-taxpayer standing.[11] For interest-injury standing we also recognize third-party stand-ing, which allows a litigant to raise the rights of a third person in special circumstances.[12] To establish citizen-taxpayer standing, a litigant must show that the issues raised are of public significance and that it is an appropriate litigant to seek adjudication of those issues.[13]

At oral argument before us, LPPR conceded that the constitutional right it seeks to establish is an individual right. But LPPR nonetheless maintained that compelled psychotropic medicating is a matter of great social consequence and therefore a matter of public significance for purposes of citizen-taxpayer standing. In *Keller v. French* the plaintiffs attempted to rely on citizen-taxpayer standing to assert the personal constitutional rights of a small number of third parties involved in a legislative investigation.[14] There, however, "[w]e decline[d] to allow the use of citizen-taxpayer standing as a substitute for third-party standing."[15] *Keller* is indistinguishable from the situation here—LPPR seeks to establish a personal constitutional right on behalf of an unknown number of minors through citizen-taxpayer standing. But LPPR offers no persuasive argument to

3. *Keller v. French*, 205 P.3d 299, 302 (Alaska 2009) (citing *St. Paul Church, Inc. v. Bd. of Trs. of the Alaska Missionary Conference of the United Methodist Church, Inc.*, 145 P.3d 541, 549–50 (Alaska 2006)).

4. *Armstrong v. Tanaka*, 228 P.3d 79, 82 (Alaska 2010) (citing *Stone v. Int'l Marine Carriers, Inc.*, 918 P.2d 551, 554 (Alaska 1996)).

5. *Christensen v. NCH Corp.*, 956 P.2d 468, 473 (Alaska 1998) (citing *Stone*, 918 P.2d at 554).

6. *Marsingill v. O'Malley*, 128 P.3d 151, 156 (Alaska 2006) (citing *Alderman v. Iditarod Props., Inc.*, 104 P.3d 136, 140 (Alaska 2004)).

7. *Id.* (quoting *Nichols v. State Farm Fire & Cas. Co.*, 6 P.3d 300, 303 (Alaska 2000)).

8. *Keller*, 205 P.3d at 302 (quoting *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1034 (Alaska 2004)).

9. *Trs. for Alaska v. State*, 736 P.2d 324, 327 (Alaska 1987) (quoting *Moore v. State*, 553 P.2d 8, 23 n. 25 (Alaska 1976)).

10. *Id.* (citing *Moore*, 553 P.2d at 23 & n. 25).

11. *Id.*

12. *Foster v. State*, 752 P.2d 459, 466 (Alaska 1988) (Moore, J., concurring) ("Under the interest-injury approach, a litigant can have standing either to protect his own rights, or, in rare cases, to protect the rights of third parties by acting in a representative capacity.") (citing *Wagstaff v. Super. Ct., Fam. Ct. Div.*, 535 P.2d 1220, 1225–26 (Alaska 1975)); *see also, e.g., State v. Planned Parenthood of Alaska*, 35 P.3d 30, 34 (Alaska 2001) (citing among others *Singleton v. Wulff*, 428 U.S. 106, 117, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)) (stating "physicians have standing to challenge abortion laws on behalf of prospective patients"); *Bonjour v. Bonjour*, 592 P.2d 1233, 1241 n. 15 (Alaska 1979) (citing *Abington Sch. Dist. v. Schempp*, 374 U.S. 203, 224 n. 9, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963)) (concluding parent had standing to assert child's constitutional rights under the Establishment Clause).

13. *Keller*, 205 P.3d at 302 (citing *Trs. for Alaska*, 736 P.2d at 329).

14. *See id.* at 301–04 (concerning protections during legislative investigations under the fair and just treatment clause of the Alaska Constitution).

15. *Id.* at 304.

permit substituting citizen-taxpayer standing for third-party standing in this case.

 LPPR fails to satisfy the elements of citizen-taxpayer standing in any event. As the State contends, even assuming the issues raised are of public significance for citizen-taxpayer standing,[16] an individual (or group) directly affected by the State's administration of psychotropic drugs to minors would be the appropriate litigant. And despite LPPR's argument to the contrary, the systemic relief LPPR seeks could be obtained by an individual litigant through the application of stare decisis [17] or by a class action seeking broad declaratory and injunctive relief.[18] As we made clear in *Keller*, "[t]hat individuals who are more directly affected have chosen not to sue despite their ability to do so does not confer citizen-taxpayer standing on an inappropriate plaintiff." [19]

LPPR speculates that potential litigants are limited in their ability to sue to establish and protect their individual constitutional rights regarding compelled psychotropic medication. LPPR suggests, without providing any supporting evidence, that people involved in protective proceedings fear retaliation by the State if they contest compelled psychotropic medication. Yet it is in those very proceedings where protected persons have access to counsel to represent their interests and protect against potential retaliation.[20] LPPR also suggests that individuals are reluctant to be involved in lawsuits out of

fear of an adverse attorney's fees award. Yet the legislature has expressly provided protection against adverse attorney's fees awards for those who unsuccessfully assert non-frivolous constitutional claims without an economic incentive.[21]

We therefore affirm the superior court's dismissal of LPPR's suit for lack of standing.

## B. Stay Of Discovery

 LPPR argues it was an abuse of discretion for the superior court to stay discovery because LPPR required discovery to defend against the State's motion for judgment on the pleadings. But LPPR raises this argument for the first time on appeal. LPPR's opposition to the State's motion to stay discovery did not contain an explicit argument that LPPR required discovery to establish citizen-taxpayer standing. LPPR's only mention of standing in its opposition to stay discovery was an assertion that the issue was "unmeritorious and [could] be addressed by naming additional plaintiffs." And although LPPR's opposition to the State's motion for judgment on the pleadings mentioned that discovery would be used to reveal the State's purported coercion of parents, the motion never explicitly stated discovery was necessary to satisfy citizen-taxpayer standing. The issue is therefore not properly before us and we decline to address

16. *But cf. id.* at 305 (Winfree, J., concurring) (commenting that violation of an individual's personal constitutional rights likely does not constitute "public significance" justifying citizen-taxpayer standing).

17. *See Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 373, 376–78 (Alaska 2007) (establishing, upon one patient's challenge, standards for involuntary commitment for a mental disorder); *Myers v. Alaska Psychiatric Inst.*, 138 P.3d 238, 239 (Alaska 2006) (establishing, upon one patient's challenge, standards treatment facilities must follow for administering psychotropic medication to patients in non-emergency situations).

18. *See Smith v. Cleary*, 24 P.3d 1245, 1247, 1251–52 (Alaska 2001) (observing class consisting of state prisoners moved to enjoin State from transferring prisoners to out-of-state jails but not ing class could have requested a broad declaratory judgment).

19. *Keller*, 205 P.3d at 303. Although we conclude those directly affected by the State's administration of psychotropic drugs to minors are appropriate litigants, we express no opinion on the superior court's comment that the State could be an appropriate litigant.

20. *See* AS 47.30.725(d) (providing the respondent with a right to be represented by an attorney before involuntary admission for mental health treatment); *see also Wetherhorn*, 156 P.3d at 383 (stating the Alaska Constitution's Due Process Clause guarantees a person the right to counsel in involuntary commitment and administration of psychotropic medication proceedings). Potential litigants may be indigent or unable to afford representation, as LPPR suggests, but the right to court-appointed counsel disposes of LPPR's suggestion that this prevents them bringing suit.

21. *See* AS 09.60.010(c)(2).

it.[22]

## C. Attorney's Fees Award

■ The State requested and received an attorney's fees award under Rule 82(b)(2). LPPR argues that it was an abuse of discretion for the superior court not to give weight to Rule 82(b)(3)(I), which allows the court to vary a Rule 82(b)(2) award if the presumptive award "may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts."[23]

We first note that LPPR did not explicitly argue in the superior court and does not argue on appeal that it is protected from an adverse attorney's fees award under AS 09.60.010(c)(2), although its lawsuit appears to have "concern[ed] the establishment, protection, or enforcement of a [constitutional] right."[24] We therefore express no opinion on the application of AS 09.60.010(c)(2) to this case. Instead we follow the parties' convention in analyzing the superior court's attorney's fees award under Rule 82.

■ The presumptive Rule 82(b)(2) award here is less than $4,000.[25] LPPR argues that the adverse award will deter similarly situated litigants from bringing suit, but we have already noted that statutory protection against adverse attorney's fees awards exists for certain non-prevailing parties raising constitutional claims.[26] Based on the record, we conclude that it was not abuse of discretion for the superior court to award the State partial attorney's fees under Rule 82(b)(2).

## V. CONCLUSION

We AFFIRM the superior court's decisions.

CARPENETI, Chief Justice, not participating.

---

22. *See Vivian P. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.,* 78 P.3d 703, 709 (Alaska 2003) ("We will not address an issue on appeal that was not raised at trial." (citing *Brandon v. Corr. Corp. of Am.,* 28 P.3d 269, 280 (Alaska 2001))). We apply our independent judgment to determine if an issue has been waived. *Lauth v. State,* 12 P.3d 181, 184 (Alaska 2000) (citing *Wilkerson v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.,* 993 P.2d 1018, 1021 (Alaska 1999)).

23. Alaska R. Civ. P. 82(b)(3)(I).

24. AS 09.60.010(c)(2).

25. Because the superior court's attorney's fees award "accords with the presumptive percentages in Rule 82(b)(2) ... the court need not offer an explanation of its award." *Marsingill,* 128 P.3d at 163 (citing *Nichols,* 6 P.3d at 305).

26. *See* note 21, above and accompanying text.