NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ED RICHARDSON and<br>DIANNE NELSON, | ) | |
| | ) | Supreme Court No. S-13696 |
| | ) | |
| Appellants, | ) | Superior Court No. 3HO-08-00004 PR |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND JUDGMENT* |
| ESTATE OF JOSEPH EDMOND | ) | |
| BERTHELOT, JR., and | ) | No. 1448 - January 16, 2013 |
| Personal Representative AMANDA | ) | |
| BERTHELOT, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Anna M. Moran, Judge.

Appearances: Ed Richardson and Dianne Nelson, pro se, Foresthill, California, Appellants. No appearance by Appellees.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices.

---

\*      Entered under Alaska Appellate Rule 214.

## I.    INTRODUCTION

A married man died, leaving behind a modest estate that included a home in Anchor Point.  Prior to his death, his girlfriend had loaned him $10,000, secured by a deed of trust on the home.  Following his death, the man's surviving spouse applied to be and was appointed as personal representative of the estate.  The surviving spouse moved to invalidate and vacate the girlfriend's deed of trust.  Before the superior court entered a final judgment on the surviving spouse's motion, and while an order staying the girlfriend's scheduled foreclosure sale was in place, the girlfriend proceeded with a foreclosure sale on the home, at which the home was sold to the girlfriend's caregiver.  The surviving spouse moved to invalidate and vacate the trustee's deed from the foreclosure sale.  Before the superior court entered a final judgment on this motion, the girlfriend's caregiver conveyed his interest in the home via quitclaim deed to a third party purchaser.  As an interested party in the probate proceedings, the girlfriend also challenged almost every action of the surviving spouse in her capacity as personal representative.

The superior court invalidated and vacated both the girlfriend's deed of trust and the trustee's deed from the foreclosure sale.  The superior court also denied all of the girlfriend's other motions and opposition to the probate proceedings.  The girlfriend and her caregiver appealed.  Because we find no error in the superior court proceedings, we affirm the decisions of the superior court.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Joseph Edmond Berthelot, Jr. (Joseph), died on December 21, 2007, without a will.  At the time of his death, he was married to Amanda Gail Berthelot (Amanda), and a consolidated divorce/dissolution proceeding between the Berthelots was pending before the superior court.  The Berthelots had married in 1994 and ceased living

together sometime around May 2006. The superior court did not issue a divorce or dissolution decree prior to Joseph's death. At the time of his death, Joseph was romantically involved with Dianne Nelson. Nelson moved into Joseph's Anchor Point home in May 2007, and she continued to live in the Anchor Point home following his death.

In March 2007, approximately nine months before Joseph died, Nelson loaned him $10,000. Pursuant to a signed promissory note, the note was due and payable on or before March 31, 2008. The loan was secured by a deed of trust on the Anchor Point home in favor of Nelson and Ronald W. Wright, as trustees of the Eagle's Nest Irrevocable Family Trust (Eagle's Nest trust).[1] The deed of trust was recorded in the Homer Recording District on October 22, 2007. Amanda did not sign the deed of trust.

In April 2008, following Joseph's death and pending resolution of the probate proceedings, Nelson recorded four notices of default and sale against the Anchor Point home, one of which stated that the home would be sold at public auction on July 15, 2008.

Joseph left a relatively modest estate. The personal representative's final accounting valued the total estate at $50,250.72. A final accounting consisted of three line items: (1) the Berthelots' Anchor Point home ($47,650.72); (2) home furnishings ($200); and (3) Joseph's tools ($2,400).

### B. Proceedings

Amanda was appointed as the estate's personal representative. On June 17, 2008, Amanda filed a motion to confirm disallowance of Nelson's creditor claim on the Anchor Point home and to terminate the Eagle's Nest trust's deed of trust. Two days

---

[1] Wright later resigned as co-trustee of the Eagle's Nest trust, leaving Nelson as the only trustee.

later, Amanda moved for an order to stay Nelson's July 15 foreclosure sale during the pendency of Amanda's motion to confirm disallowance.[2]

On June 27, 2008, Amanda filed a Motion to Determine Spousal Allowances and Intestate Share of Estate, in which she requested the court to confirm that "as the surviving spouse of the decedent, she is entitled to the statutory allowances set forth in AS 13.12.402-405, as well as an intestate share of the estate under AS 13.12.102." Amanda sought "the first $55,000 of the estate to cover her homestead, exempt property, and family allowances." She also sought "the first $100,000 of the intestate estate, plus one-half of any portion above that sum."

On July 8, 2008, the superior court stayed Nelson's scheduled foreclosure sale of the Anchor Point home "pending a ruling on the personal representative's Motion to Confirm Disallowance of Claim and Terminate Deed of Trust." Nelson was mailed a copy of this order on July 8. On July 15, in violation of the superior court's stay order, Nelson proceeded with the foreclosure sale. The home was sold to Ed Richardson, described by Nelson as her "caregiver." Three days later, Nelson executed a trustee's deed conveying the Anchor Point home to Richardson, which Richardson recorded on August 4, 2008. On August 5, Richardson recorded a lis pendens on the property.[3] On

---

[2]    Although not at issue in this appeal, Nelson's creditor claims ultimately were allowed to be submitted to the estate.

[3]    On August 5, 2008, Richardson filed a § 1983 civil rights action in federal district court regarding the Anchor Point home, which served as the basis for his lis pendens. In an amended federal complaint, filed in September 2008, Richardson named the following individuals and entities as defendants: State of Alaska Superior Court; Amanda Berthelot; Jennifer Wells (the master during these proceedings); Anna Moran (superior court judge during these proceedings); Margaret Murphy (the district court judge in the forcible entry and detainer action against Nelson); Daniel Westerburg (attorney for Amanda); Mike Tennison (Amanda's father); and the Estate of Edmond
(continued...)

August 11, Nelson executed and recorded an amended trustee's deed. On August 15, Richardson recorded an amended lis pendens.

On August 22, 2008, Amanda moved to invalidate and vacate the trustee's deeds that resulted from Nelson's foreclosure sale. Amanda also moved to vacate the lis pendens and to preclude both Nelson and Richardson from additional recording of instruments without court approval. Amanda contended not only that the foreclosure sale to Richardson was void because the superior court "unequivocally prohibited the trustee from conducting the sale by means of its July 8, 2008 order" but also that the sale was voidable because Richardson was not a bona fide purchaser for value.

On September 24, 2008, Amanda moved for summary judgment, seeking an order invalidating the Eagle's Nest trust's deed of trust. She contended that, because she did not sign the deed of trust conveying an interest in the Anchor Point home to Nelson, she could set aside the conveyance within one year of the date of recording of the deed.

On October 20, 2008, Master Jennifer K. Wells filed a Master's Report and Order Regarding Pending Motions. The report identified eight pending requests: (1) Amanda's motion to determine spousal allowance; (2) Amanda's motion for order to show cause why Nelson should not be held in contempt of court;[4] (3) Amanda's motion

_____

[3]    (...continued)
Berthelot. Richardson's complaint was dismissed without prejudice to Richardson's right to pursue remedies in state court on October 3, 2008.

[4]    On August 12, 2008, after Nelson proceeded with the foreclosure sale, Amanda filed a Motion for Order to Show Cause Why Dianne Nelson Should Not be Held in Contempt of Court. In her October 20, 2008 master's report, Master Wells recommended "that the court grant the motion for an order to show cause hearing." On March 31, 2009, the superior court issued an Order to Show Cause, ordering Nelson to "attend a hearing . . . and show cause why she should not be held in contempt of court (continued...)

to correct case caption;[5] (4) Amanda's motion for summary judgment; (5) Amanda's motion to invalidate the trustee's deeds, vacate the lis pendens, and preclude additional recording; (6) Nelson's request for a stay of proceedings;[6] (7) Nelson's requests for jury trials;[7] and (8) Amanda's objection to the master's report.[8] The master made

---

[4]    (...continued)
for her apparent violation of [the] court's July 8, 2008 [order staying Nelson's non-judicial foreclosure sale]." Amanda later filed a Notice of Withdrawal of Motion for Order to Show Cause, and in April 2009 the superior court vacated the show cause hearing. This order is not at issue in this appeal.

[5]    On August 15, 2008, Amanda filed a Motion to Correct Case Caption, requesting the court "correct the caption of this case to name the decedent as 'Joseph Edmond Berthelot, Jr.' " On March 31, 2009, the superior court granted the motion. The corrected case caption is not at issue in this appeal.

[6]    On August 29, 2008, Nelson requested a 30-day stay of all probate proceedings. On March 31, 2009, the superior court denied Nelson's motion for stay.

[7]    On July 21, 2008, Nelson requested a jury trial on Amanda's Motion to Determine Spousal Allowances and Intestate Share of Estate. On August 19, 2008, Nelson requested a jury trial on the issue of damages sustained when the estate evicted her from the Anchor Point home. On October 1, 2008, Nelson filed an opposition to Amanda's motion for summary judgment to invalidate and vacate Nelson's deed of trust, the trustee's deeds, and the lis pendens, in which she requested a jury trial. Finally, on October 31, 2008, both Nelson and Richardson requested "that all hearings and trials of facts and issues of this case be tried in the future by a jury (or juries) of [his or her] peers." Neither Nelson's nor Richardson's October 31, 2008 request identified a particular issue on which the request for a jury trial was made. The superior court did not hold a jury trial on any of the above issues.

[8]    An August 15, 2008 master's report applied an analysis adopted from Alaska's secured transaction laws. Amanda's objections, which noted that the cited laws do not pertain to real estate transactions, were received after the court signed the order. Nonetheless, the October 20, 2008 master's report recommended "that the request to delete paragraphs 11-13 be granted so that the record is clear." These objections are not

(continued...)

recommendations almost entirely in favor of Amanda. The only recommendation not entirely in Amanda's favor regarded the payment of a family allowance under AS 13.12.405(a), which allows a family allowance of up to $18,000 to a surviving spouse. Because Amanda's submitted affidavit "made no statements regarding her financial situation or need for maintenance," the master found it "difficult . . . to determine whether $18,000 is reasonable." The master then recommended that the family allowance be "an amount to be determined" later.

On November 3, 2008, Amanda filed an objection to the master's report. She contended that, in her June 27, 2008 Motion to Determine Spousal Allowances and Intestate Share of Estate, she placed Nelson "on notice of her proposal to pay herself an $18,000 family allowance." Amanda argued that, although Nelson opposed her motion on a number of grounds, Nelson did not challenge the amount of the proposed family allowance. Three days later, Amanda filed a Motion for Summary Judgment on Amount of Family Allowance, seeking the full $18,000. In support of this motion, Amanda submitted an affidavit stating her financial situation both before and after Joseph's death.

On March 25, 2009, about one week before a superior court hearing regarding the master's recommendations, Richardson executed a quitclaim deed in which he conveyed all his interest in the Anchor Point home to Stephen Schoenstein. The quitclaim deed was accompanied by a deed of trust on the Anchor Point home for $20,000 in favor of Richardson.[9] Schoenstein then leased the home to a tenant.

On March 31, 2009, Superior Court Judge Anna M. Moran held a hearing on the pending motions identified in the master's report. The superior court approved

---

[8]    (...continued)
at issue in this appeal.

[9]    These documents were recorded on March 31, 2009, the same day as the superior court's hearing on the master's recommendations.

each of the master's recommendations on the record and subsequently issued individual orders on each issue. In particular, the superior court entered: (1) an order invalidating the Eagle's Nest trust's deed of trust; and (2) an order invalidating and vacating the trustee's deeds, vacating the lis pendens, and precluding both Nelson and Richardson from recording additional instruments without court approval. The superior court specifically found that "Richardson is not a bona fide purchaser. Richardson was intimately acquainted with Nelson's various claims against the estate. Richardson attended various hearings, visited with lawyers and performed errands on behalf of Nelson in the instant probate matter as well as other related legal hearings — all before the alleged date of sale of property."

On April 2, 2009, the superior court issued an Order Confirming Statutory Allowances and Intestate Share of Surviving Spouse. The superior court held that Amanda, "as the surviving spouse of the decedent, is entitled to a homestead allowance of $27,000 under A.S. 13.12.402 [and] an exempt property allowance of $10,000 under A.S. 13.12.403." The superior court additionally found that Amanda is entitled to an intestate share of the estate of the first $100,000 plus one-half of any balance of the estate above that sum. Later in April the superior court issued an Order Granting Personal Representative's Motion for Summary Judgment on Amount of Family Allowance based on the fact that "no interested person has opposed it."

In April 2009, after learning of the conveyance of the Anchor Point home from Richardson to Schoenstein, Amanda filed a Request for Writ of Assistance to assist her in gaining possession of the home. The superior court issued the Writ of Assistance later that month.

Also in April 2009, Amanda filed a Notice of Proposed Distribution of the Estate. The notice valued the estate's assets at $67,600. Taking into account a Ford Motor Credit judgment lien against the Anchor Point home for $17,760.30, the net value

of the estate's assets was $49,839.70. Based on statutory allowances totaling $55,000, Amanda proposed to distribute all of the estate's assets to herself. Because the adjusted net value of the estate was negative after the statutory allowances, neither Nelson nor any of the other unsecured creditors would receive any portion of the estate. Ford Motor Credit would retain its judgment lien against the property.

On April 27, 2009, the superior court distributed its Final Judgment, in which it: (1) vacated Nelson's deed of trust; (2) vacated the trustee's deed and amended trustee's deed purporting to convey the property from Nelson to Richardson; (3) vacated the lis pendens and amended lis pendens; (4) ordered "any purported conveyance or encumbrance of the subject property by Dianne Nelson to Ed Richardson . . . vacated effective March 31, 2009"; and (5) precluded Nelson and Richardson from recording any future instruments against the Anchor Point home without court approval.

On April 29, 2009, Amanda filed a motion for attorney's fees against Nelson, the Eagle's Nest Irrevocable Family Trust, and the Eagle's Nest-Kasilof Irrevocable Family Trust.[10] She contended that, because she had prevailed on all the issues regarding the Anchor Point home, she was the prevailing party. She also sought enhanced fees under Alaska Civil Rule 82(b)(3), citing: (1) the number of contested proceedings which were briefed throughout the litigation; (2) "a larger pattern of vexatious and bad faith conduct directed against" her; (3) that she had to file an eviction

---

[10] Although Amanda and the superior court assume that they are one trust, in their opening brief on appeal Nelson and Richardson state that the Eagle's Nest Irrevocable Family Trust and the Eagle's Nest-Kasilof Irrevocable Family Trust are two separate trusts. Only the Eagle's Nest Irrevocable Family Trust is implicated in the present appeal, and thus no judgment is entered against the Eagle's Nest-Kasilof Irrevocable Family Trust.

against Nelson to remove her from the Anchor Point home,[11] Nelson's and Richardson's "stalking" petition against Amanda's father, and Richardson's federal district court suit against Amanda and others; and (4) the "intemperate tone of . . . Nelson's court filings and her arguments made in open court," which "reflect a personal and deep-seated animosity toward [Amanda] and her counsel well beyond the norm." Arguing that all of the Civil Rule 82(b)(3) factors were present, Amanda requested that "she be granted her actual reasonable attorney's fees incurred in litigating . . . Nelson's claims: $10,342.50." She also contended that any fee award should be against not only Nelson's trusts but also Nelson personally.

On May 26, 2009, Amanda filed a Final Accounting and "transferred all of the net estate to herself in partial satisfaction of the statutory allowances awarded her by the court." The final accounting valued the estate's inventory at $50,250.72.

Sometime in May 2009, after regaining possession of the Anchor Point home, Amanda discovered personal property stored on the premises that did not belong to either her or Joseph. Upon inspection, she concluded that the personal property belonged either to Nelson, Richardson, or Schoenstein. Amanda's father boxed up the abandoned personal property and moved the property into a shed on the premises. Amanda notified Nelson, Richardson, and Schoenstein that they had 30 days in which to remove the property, otherwise Amanda would dispose of it by public sale. Amanda then filed a Motion for Approval of Personal Representative's Plan to Dispose of Abandoned Personal Property, seeking approval to follow the protocol laid out in AS 34.03.260, which governs abandoned personal property left by a tenant. The

---

[11] In April 2008, after Nelson refused to leave the Anchor Point home, Amanda filed a Complaint for Forcible Entry and Detainer. On April 29, 2008, the superior court entered a Judgment for Possession in Amanda's favor. This forcible entry and detainer proceeding is not at issue in this appeal.

superior court later entered an Order Approving Personal Representative's Plan to Dispose of Abandoned Personal Property.

In August the superior court issued an Order Granting Personal Representative's Motion for Attorney's Fees, awarding $5,000 in fees to Amanda. The order also stated that the "fee award and any cost award will be against Dianne Nelson and Eagle's Nest Irrevocable Family Trust, Eagle's Nest-Kasilof Irrevocable Family Trust."

In October the superior court re-distributed its Final Judgment to include the award of attorney's fees and costs to Amanda. She was awarded $5,000 in fees and $1,152.73 in costs against Nelson and the trusts.

Both Nelson and Richardson appeal. The estate has not participated in this appeal.

## III.   STANDARD OF REVIEW

"We use our independent judgment in interpreting statutes. . . . In interpreting statutes, we look to the meaning of the language, the legislative history, and the purpose of the statute in question. We adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[12] Whether a judgment is void is a question of law that we review de novo.[13] Threshold questions such as standing are questions of law

---

[12]   *Nat'l Bank of Alaska v. Ketzler*, 71 P.3d 333, 334-35 (Alaska 2003) (internal citation and quotation marks omitted).

[13]   *Cf. Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1354 (Alaska 1974) ("[T]he validity of a judgment is strictly a question of law.").

and are reviewed de novo.[14] Whether a party was entitled to a jury trial also is a question of law that we review de novo.[15]

We review a superior court's ruling on a motion to stay for abuse of discretion.[16] "We review a superior court's determination of prevailing party status and attorney's fees for abuse of discretion."[17] "We will find abuse of discretion only where this court is left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[18]

## IV.    DISCUSSION

### A.    The Superior Court Did Not Err When It Invalidated And Vacated The March 2007 Eagle's Nest Deed Of Trust On The Anchor Point Home.

The primary question before us regards the validity of the March 2007 deed of trust executed by Joseph on the Anchor Point home in favor of Nelson and Wright, on behalf of the Eagle's Nest trust. The validity of the underlying $10,000 promissory note is uncontested — the sole question is whether the Eagle's Nest trust's deed of trust is valid and therefore assures a secured interest in the Anchor Point home. In its March 31, 2009 ruling, the superior court invalidated and vacated the Eagle's Nest trust's deed of trust, resulting in Eagle's Nest trust holding an unsecured interest.

---

[14]    *Gilbert M. v. State*, 139 P.3d 581, 586 (Alaska 2006).

[15]    *Riddell v. Edwards*, 32 P.3d 4, 7 (Alaska 2001).

[16]    *Armstrong v. Tanaka*, 228 P.3d 79, 82 (Alaska 2010) (citing *Stone v. Int'l Marine Carriers, Inc.*, 918 P.2d 551, 554 (Alaska 1996)).

[17]    *Wooten v. Hinton*, 202 P.3d 1148, 1151 (Alaska 2009).

[18]    *Id.* (quoting *Clemensen v. Providence Alaska Med. Ctr.*, 203 P.3d 1148, 1151 (Alaska 2009)) (internal quotation marks omitted).

Alaska Statute 34.15.010 broadly governs the manner of executing conveyances. Subsection (a) provides:

> A conveyance of land, or of an estate or interest in land, may be made by deed, signed and sealed by the person from whom the estate or interest is intended to pass, who is of lawful age, or by the lawful agent or attorney of the person, and acknowledged or proved, and recorded as directed in this chapter, without any other act or ceremony whatsoever.

Subsections (b) and (c) govern a conveyance of an interest in the family home or homestead by a married person:

> (b) In a deed or conveyance of the family home or homestead by a married man or a married woman, the husband and wife shall join in the deed or conveyance.

> (c) The requirement that a spouse of a married person join in a deed or conveyance of the family home or homestead does not create a proprietary right, title, or interest in the spouse not otherwise invested in the spouse.

Thus, while both husband and wife must sign a deed of conveyance of the family home or homestead, this requirement on its own does not create an ownership interest in a spouse in the home that would not otherwise exist.

Subsection (d) governs instances in which a spouse fails to join in a conveyance of a family home or homestead:

> (d) Failure of the spouse to join in the deed or conveyance does not affect the validity of the deed or conveyance, unless the spouse appeared on the title. The deed or conveyance is sufficient in law to convey the legal title to the premises described in it from the grantor to the grantee when the deed or conveyance is otherwise sufficient, and

> > (1) no suit is filed in a court of record in the judicial district in which the land is located within one year from the date of recording of the deed or conveyance by the spouse who failed to join in the deed or

conveyance to have the deed or conveyance set aside, altered, changed, or reformed; or

(2) the spouse whose interest in the property is affected does not record, within one year in the office of the recorder for the recording district where the property is situated, a notice of an interest in the property.

In 2003, in *National Bank of Alaska v. Ketzler*,[19] we interpreted AS 34.15.010 and addressed a case factually similar to the present appeal. In *Ketzler*, a husband executed a deed of trust on the family home in favor of National Bank of Alaska in return for a $55,000 loan. Title to the home was held in the husband's name alone.[20] The wife did not sign the deed of trust.[21] The husband died shortly thereafter, and the wife applied for informal probate of the husband's will. The wife then filed a motion to have the deed of trust declared void and to enjoin the foreclosure, along with a motion to establish exempt property and to set a family allowance. The superior court granted the wife's motion to set the deed aside.[22]

We held in *Ketzler* that the wife's interest in the home survived the death of the husband, noting that "[t]he interest required for [the wife] to challenge the deed is supplied by the probate homestead allowance and her right to inherit the decedent's property . . . ."[23] "Because [the wife] timely took the action that the statute provides will invalidate a deed that fails to contain the signature of the untitled spouse in order to

---

[19]   71 P.3d 333 (Alaska 2003).

[20]   *Id.* at 333.

[21]   *Id.* at 333-34.

[22]   *Id.* at 334.

[23]   *Id.* at 337 (internal citations omitted).

protect her right of inheritance," we upheld the superior court's invalidation of the bank's deed.[24]

In the present case, Joseph and Amanda married in 1994. They lived together in the Anchor Point home for approximately 13 years.[25] There is no indication in the record that Amanda's name appeared on the title. In March 2007, Joseph executed a deed of trust on the Anchor Point home in favor of the Eagle's Nest trust. Nelson recorded the deed of trust in October 2007. Joseph died on December 21, 2007. At the time of his death, he and Amanda were in the midst of a divorce proceeding, but no formal divorce decree had issued. In September 2008, 11 months after the Eagle's Nest trust's deed of trust was recorded, Amanda filed a Motion for Summary Judgment, seeking to invalidate the Eagle's Nest trust's deed of trust. In March 2009, the superior court granted the motion.

*Ketzler* governs the present case. As in *Ketzler*, Amanda's interest in the home survived Joseph's death. Amanda sought to have the deed of trust on the family home set aside within one year from the date of recording, in accordance with AS 34.15.010(d). We therefore affirm the superior court's March 2009 order invalidating and vacating the Eagle's Nest trust's deed of trust.

**B.    The Superior Court Did Not Err When It Invalidated And Vacated The Trustee's Deeds And The Lis Pendens.**

In July 2008, Nelson conducted a non-judicial foreclosure sale of

---

[24]    *Id.*

[25]    Nelson and Richardson contend that the superior court committed clear error in concluding that the Anchor Point home was the family home or homestead because Amanda had not lived in the home since sometime around May 2006. But the Berthelots occupied the Anchor Point home for 13 years before they separated for a year-and-a-half. We find no clear error in the superior court's factual determination that the Anchor Point home was the family home.

the Anchor Point home in violation of the then-existing superior court Order Staying Foreclosure Sale. The home was sold to Ed Richardson. In August 2008, Richardson recorded: (1) a trustee's deed; (2) a lis pendens; (3) an amended trustee's deed; and (4) an amended lis pendens. In March 2009, the superior court invalidated and vacated the trustee's deeds and the two lis pendens.[26] In addition to the master's recommendation that the foreclosure sale was void, the superior court specifically found that Richardson was not a bona fide purchaser for value. Nelson contended that she "had the right as beneficiary to initiate and carry out a foreclosure against the [Anchor Point home]," and that she validly executed a trustee's deed "after [a] foreclosure sale that had been lawfully conducted without any objections."

1. **Nelson's July 2008 sale of the Anchor Point home to Richardson was void.**

We have recognized that a court must distinguish between a void and a voidable sale when considering whether to set aside a foreclosure sale.[27] A void sale may be automatically set aside.[28] A sale is void if the "alleged defect went . . . to the trustee's right to proceed with foreclosure," rather than merely to "the mechanics of exercising the power."[29] A foreclosure sale will be void "only in cases which reach

---

[26] AS 13.16.025 grants the probate court concurrent jurisdiction in "actions to determine title to property alleged to belong to the estate."

[27] *Rosenberg v. Smidt*, 727 P.2d 778, 783-84 (Alaska 1986).

[28] *Univ. of Alaska v. Simpson Bldg. Supply Co.*, 530 P.2d 1317, 1324 n.21 (Alaska 1975).

[29] *Rosenberg*, 727 P.2d at 784 (quoting REAL ESTATE FINANCE LAW, § 7.21 at 489).

unjust extremes."[30]  Stated similarly, "[o]nly substantial defects such as the lack of a substantive basis to foreclose in the first place will make a sale void."[31]  A bona fide purchaser for value without notice is not protected where the foreclosure sale is determined to have been void.[32]

We have not previously stated whether a foreclosure sale completed in violation of a judicial stay is void or voidable.  But at least two other state courts have held that a foreclosure sale made in violation of an injunction is void and transfers no title.[33]  In the context of bankruptcy proceedings, a significant number of courts have held that "[a]n action taken in violation of the automatic stay is void,[34] not merely voidable."[35]  In *Compton v. Chatanika Gold Camp Properties*,[36] we adopted the Ninth

---

[30]    *Semlek v. Nat'l Bank of Alaska*, 458 P.2d 1003, 1006 (Alaska 1969) ("While noncompliance with the statutory provisions regarding foreclosure by the power under a mortgage or trust deed is not to be favored, the remedy of setting aside the sale will be applied only in cases which reach unjust extremes.").

[31]    *Rosenberg*, 727 P.2d at 783-84.

[32]    *Id.* at 783 (quoting *Henke v. First S. Props., Inc.*, 586 S.W.2d 617, 620 (Tex. Civ. App. 1979)).

[33]    *See Wilson v Bryan*, 142 S.E. 491, 492 (N.C. 1928) (foreclosure sale void because made after issuance of restraining order); *O'Brian v. First State Bank*, 1996 WL 515532, at *5 (Tex. App. Sept. 11, 1996); *Pioneer Bldg. & Loan Ass'n v. Cowan*, 123 S.W.2d 726, 729-30 (Tex. App. 1938) ("If the [foreclosure] sale was made after either notice or service of temporary injunction and in violation thereof, then the same was void."); *Jackson v. The Praetorians*, 83 S.W.2d 740, 741 (Tex. App. 1935) ("[T]he sale of the property by the trustee, and the execution of the deed to the purchaser [] were all had in defiance of the injunction, and for that reason are void.").

[34]    *See* 11 U.S.C. § 362(i) (2006) (automatic stay provision).

[35]    *Stephens v. Hemyari*, 216 S.W.3d 526, 529 (Tex. App. 2007) (quoting *Cont'l Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex. 1988)) (internal
(continued...)

Circuit Court of Appeals' rule and characterized actions in violation of the automatic stay in bankruptcy proceedings as void, not voidable.[37] Under such a rule, "a foreclosure sale that occurs during the automatic stay [in a bankruptcy proceeding] is void and passes no title."[38]

We conclude that Nelson's foreclosure sale to Richardson was void. The superior court's July 8, 2008 Order Staying Foreclosure Sale went directly to Nelson's right to proceed with the foreclosure sale — the stay specifically prohibited Nelson from

---

[35]    (...continued)
quotation marks omitted). *In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007) ("[A]ctions taken in violation of the [bankruptcy] stay are void."); *In re Soares*, 107 F.3d 969, 976 (1st Cir. 1997) ("Treating an action taken in contravention of the automatic stay as void places the burden of validating the action after the fact squarely on the shoulders of the offending creditor."); *Johnson v. JP Morgan Chase Bank*, 395 B.R. 442, 449 (Bankr. E.D. Cal. 2008) ("An action in violation of the stay is void ab initio rather than merely voidable."); *40235 Wash. St. Corp. v. W.C. Lusardi*, 177 F.Supp.2d 1090, 1105 (S.D. Cal. 2001) ("Under the [Bankruptcy] Code, void transactions are treated as if they never occurred."). *But see In re Jones*, 63 F.3d 411, 412 (5th Cir. 1995) ("[A]ctions taken in violation of the automatic stay are not *void*, but rather they are merely *voidable*, because the bankruptcy court has the power to annul the automatic stay . . . .") (emphasis in original); *Bronson v. United States*, 46 F.3d 1573, 1578 (Fed. Cir. 1995) ("[I]t is inaccurate and overly broad to characterize every violation of § 362 as being absolutely void.").

[36]    988 P.2d 598 (Alaska 1999).

[37]    *Id.* at 603 (citing *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992)).

[38]    *Stephens*, 216 S.W.3d at 529 (citing *Oles v. Curl*, 65 S.W.3d 129, 132 (Tex. App. 2001)). *But see In re Jones*, 63 F.3d at 412-13 (post-petition foreclosure under deed of trust securing payment of purchase price and purchase of property at foreclosure sale by deed of trust holders not void because sale occurred after effective date of automatic stay, where deed of trust holders, who were not commercial lenders, received neither actual nor constructive notice of bankruptcy filing until after title had transferred to them).

proceeding with the sale. None of the alleged defects of Nelson's sale regard mechanical defects in Nelson's exercise of power, such as notice to interested parties. Allowing Nelson's foreclosure sale to stand would reach "unjust extremes" as well as potentially undermine the efficacy of judicial stay orders. Accordingly, the existence of the stay constituted a substantial defect in Nelson's sale. We therefore affirm the superior court's March 31, 2009 order.

## 2. The superior court did not err in vacating the lis pendens.

On August 5, 2008, Richardson filed a Complaint for Damages, Injuries, Declaratory and Injunctive Relief under 42 U.S.C. § 1983. On August 5, 2008, and August 11, 2008, Richardson recorded a lis pendens and amended lis pendens,[39] each

---

[39]    AS 09.45.940 provides for the recording of a lis pendens on real property:

> In an action affecting the title to or the right of possession of real property, the plaintiff at the time of filing the complaint, or afterwards . . . may record in the office of the recorder of the recording district in which the property is situated a notice of the pendency of the action, containing the names of the parties, and the object of the action or defense, and a description of the property affected in that district. From the time of recording the notice, a purchaser, holder of a contract or option to purchase, or encumbrancer of the property affected has constructive notice of the pendency of the action and of its pendency against parties designated by their real names.

Generally, a valid notice of lis pendens remains effective until a final judgment is entered in the action and the time for an appeal has expired. *See State ex rel. Bannister v. Goldman*, 265 S.W.3d 280, 283-84 (Mo. Ct. App. 2008) ("Generally, only on final judgment can a party be compelled to release a lis pendens, and generally the right to appeal extends the time for which property remains subject to the lis pendens doctrine.") (emphasis and internal citations omitted). In a federal civil action, a notice of appeal must be filed with the district clerk within 30 days after entry of judgment.

(continued...)

referencing the federal civil rights action. The next month Richardson filed an amended complaint in his federal action. In October 2008, the U.S. District Court dismissed Richardson's complaint "without prejudice to . . . Richardson's right to pursue his state court remedies." Richardson did not appeal the dismissal of his complaint. Richardson's two lis pendens were therefore ineffective 30 days after the U.S. District Court's final judgment. On March 31, 2009, the superior court granted Amanda's motion to vacate both of the lis pendens. Because the lis pendens were ineffective by March 2009, we affirm the superior court's order vacating both of the lis pendens.

### C. Nelson And Richardson Do Not Have Standing To Assert Schoenstein's Rights.

In spring 2009 Amanda regained possession of the Anchor Point home. Nelson and Richardson contend in their opening brief that "the [superior] court erred when it issued [Amanda] a Writ of Assistance in a probate estate, to take over property owned and occupied by persons who were not even parties to the action without any due process of the law."

On March 25, 2009, about one week before the superior court's hearing regarding the master's recommendations, Richardson executed a quitclaim deed conveying all his interest in the Anchor Point home to Stephen Schoenstein. The quitclaim deed was accompanied by a deed of trust on the Anchor Point home for $20,000 in favor of Richardson. Schoenstein then leased the home to a tenant. On March 31, 2009, the superior court invalidated and vacated the trustee's deeds. On April 14, 2009, after learning about the conveyance to Schoenstein, Amanda requested a Writ of Assistance to aid her in gaining possession of the home. The superior court issued the

---

[39]    (...continued)
FED. R. APP. P. 4.

writ and sometime in either April or early May 2009 Amanda regained possession of the Anchor Point home and displaced Schoenstein's tenant.

"The basic requirement for standing in Alaska courts is adversity."[40] A plaintiff "must have an interest adversely affected by the conduct complained of."[41] This interest is generally referred to as the "interest-injury test."[42] "Standing in [Alaska] state courts is not a constitutional doctrine; rather it is a rule of judicial self-restraint based on the principle that courts should not resolve abstract questions or issue advisory opinions."[43] Neither the interest nor the injury asserted need be great; "an identifiable trifle is enough for standing to fight out a question of principle."[44]

Neither Nelson nor Richardson has standing to pursue Schoenstein's rights on appeal. Nelson did not purport to convey the Anchor Point home to Schoenstein, and the record does not reveal any other relationship between Nelson and Schoenstein.[45] Nelson has neither an interest in the court's actions toward Schoenstein nor was she injured by the superior court's entry of the Writ of Assistance. While Richardson purported to convey the Anchor Point home to Schoenstein, he did so via quitclaim deed with no accompanying warranties. While Richardson arguably has an interest in his

---

[40]    *Gilbert M. v. State*, 139 P.3d 581, 586 (Alaska 2006) (quoting *Trs. for Alaska v. State*, 736 P.2d 324, 327 (Alaska 1987)) (internal quotation marks omitted).

[41]    *Id.*

[42]    *Id.*

[43]    *Id.*

[44]    *Id.* (quoting *Wagstaff v. Superior Court, Family Court Div.*, 535 P.2d 1220, 1225 n.7 (Alaska 1975)) (internal quotation marks omitted).

[45]    The record provides very little information about Schoenstein. It is unclear whether, outside of the transaction with Richardson, Schoenstein has any relationship with either Nelson or Richardson.

conveyance to Schoenstein, Richardson has not demonstrated that he was injured by the superior court's entry of the Writ of Assistance, for Richardson only conveyed the interests that he had in the Anchor Point home and the record does not reveal that Richardson made any assurances regarding the quality of title he passed to Schoenstein. Because they have no adversely affected interest, we conclude that neither Nelson nor Richardson has standing to assert claims on behalf of Schoenstein.

### D. The Superior Court Did Not Err When It Granted Amanda Her Statutory Allowances.

After its March 31, 2009 hearing, the superior court confirmed that Amanda was entitled to a homestead allowance of $27,000, an exempt property allowance of $10,000, and an intestate share of the estate consisting of the first $100,000 plus one-half of the balance above $100,000. On April 14, 2009, the superior court granted her motion for summary judgment on the amount of the family allowance and approved an allowance of $18,000. Nelson contends that the "[superior] court erred in its decision . . . [w]hen it allowed . . . [Amanda] to take a 'homestead' allowance" and "when it allowed [her] a spousal allowance."

Although a consolidated divorce/dissolution proceeding between the Berthelots was pending before the superior court at the time of Joseph's death, Amanda is the "surviving spouse." Alaska Statute 13.12.802(a) provides that "[a]n individual who is divorced from the decedent or whose marriage to the decedent has been annulled is not a surviving spouse . . . . A decree of separation that does not terminate the status of husband and wife is not a divorce for purposes of this section." Nor does a surviving spouse include "an individual who was a party to a valid proceeding concluded by an order purporting to terminate all marital property rights."[46]

---

[46] AS 13.12.802(b)(3).

In the present case, there was neither a final divorce decree nor an annulment of the marriage. Nor was there a decree of separation that terminated the status of husband and wife. Nor was there a court order terminating all marital property rights. Accordingly, Amanda is a surviving spouse.

As the surviving spouse, Amanda is entitled to the benefits of certain statutory provisions, which have priority over all other claims in the estate. First, Amanda is entitled to a homestead allowance of $27,000.[48] Second, she is entitled to $10,000 in value of exempt property from the estate.[49] These statutory allowances were recommended by the master's report and adopted by the superior court. Third, Amanda is entitled to a family allowance in a reasonable amount for her maintenance during the period of administration;[50] the amount awarded was $18,000. Although the master's report did not initially contain enough information to determine whether $18,000 was reasonable, Amanda later submitted an affidavit on her financial situation and Nelson did not challenge the amount. Therefore, the superior court properly awarded her $18,000. These statutory allowances total $55,000 and exceed the net value of the estate's assets — $49,839.70.

### E. The Superior Court Did Not Err When It Denied Nelson's Requests For Jury Trials.

Nelson filed multiple requests for jury trials before the superior court. A jury trial did not occur on any issue. Nelson contends that "the [superior] court erred in its decision . . . [w]hen it refused to allow . . . Nelson her Constitutionally-protected right to a trial by a jury of her peers when specifically requested."

---

[48]    AS 13.12.402.

[49]    AS 13.12.403.

[50]    AS 13.12.404.

Alaska Statute 13.06.085(a) provides a statutory right to a jury trial in a probate case. It provides that, "[i]f duly demanded, a party is entitled to trial by jury in which any controverted question of fact arises as to which any party has a constitutional right to trial by jury." The Alaska Constitution guarantees parties the right to a jury trial only to the extent that the right existed at common law.[51] We have held that no constitutional right to a jury trial exists in matters of equity.[52] Thus, Nelson and Richardson were "entitled to a jury trial under AS 13.06.085(a) only to the extent that the common law preserved such a right as to the facts at issue in this case."[53]

Nelson and Richardson made the following jury trial requests. Nelson first requested a jury trial on Amanda's Motion to Determine Spousal Allowances and Intestate Share of Estate.[54] She later requested a jury trial on the issue of damages

---

[51]    Article I, section 16 of the Alaska Constitution provides that "[i]n civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury of twelve is preserved to the same extent as it existed at common law."

[52]    *See McGill v. Wahl*, 839 P.2d 393, 396 (Alaska 1992) ("The Alaska Constitution preserves a jury trial only for those causes of action which are legal, and not equitable in nature.") (citing *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 423-24 (Alaska 1982)).

[53]    *Riddell v. Edwards*, 32 P.3d 4, 7 (Alaska 2001).

[54]    Although Nelson's July 21 motion for a jury trial directly referred to the motion to determine spousal allowances, the text of Nelson's motion additionally referred to the dispute over Nelson's creditor claim. In an August 15, 2008 report, the master recommended that Nelson had a right to a jury trial regarding her creditor claim. On September 16, 2008, the superior court granted Nelson's request for a jury trial on this issue. Amanda later moved to invalidate and vacate Nelson's deed of trust based on AS 34.15.010(d) but did not move to disallow the underlying creditor claim. Thus, although Nelson would have been entitled to a jury trial regarding her creditor claim, Nelson's petition for allowance is no longer in dispute.

sustained when the estate evicted her from the Anchor Point home.[55]  Nelson then filed

an opposition to Amanda's motion for summary judgment to invalidate and vacate

Nelson's deed of trust, the trustee's deeds, and the lis pendens, in which she requested

a jury trial.  Finally, still later, both Nelson and Richardson requested "that all hearings

and trials of facts and issues of this case be tried in the future by a jury (or juries) of [his

or her] peers."  Neither Nelson nor Richardson's October 31, 2008 request identifies a

particular issue on which the request for a jury trial is made.  The superior court did not

hold a jury trial on any of the above issues.

We find no error in the superior court's decision not to hold a jury trial.

Questions regarding Amanda's statutory allowances and intestate share, as well as her

motions to vacate Nelson's deed of trust, the trustee's deeds, and the lis pendens are all

equitable in nature.  Accordingly, the Alaska Constitution does not guarantee a jury trial

on these matters.  Moreover, Nelson has not demonstrated that any facts were actually

in dispute.  It is uncontroverted that Amanda was married to the decedent at the time of

death, nor are any additional facts required to resolve her statutory allowances in dispute.

And neither Amanda, Nelson, nor Richardson dispute any of the material facts

surrounding the characterization of the Anchor Point home.  Because Nelson's claims

were equitable in nature and because there are no facts in dispute, we affirm the superior

court's judgment.

F.    **The Superior Court Did Not Abuse Its Discretion When It Denied Nelson's Request For A Temporary Stay Of Proceedings.**

On August 29, 2008, Nelson requested a 30-day stay of all probate

proceedings. Nelson submitted a letter from Lavern Davidhizar, D.O., and Kim Thiele,

---

[55]    The master's October 20, 2008 report stated that Nelson's request for a jury
trial on the forcible entry and detainer action was "more properly raised in the context
of that case," and thus recommended that Nelson's request be denied.  We agree.

D.O., who recommended that Nelson have 60 days off, as well as a letter from Kimberly J. Lindley, MS LPC, who recommended 30 days off.  On March 31, 2009, the superior court denied Nelson's motion.

A stay of proceedings is a matter of convenience and not a matter of right.[56] "We review a superior court's ruling on a motion to stay discovery for abuse of discretion."[57]

Nelson's numerous filings in the present case indicate that she was able to actively participate in the ongoing litigation.  Further, the record does not show that Nelson was substantially harmed by the denial of the stay.  At the time of Nelson's request for stay, most of the motions were ripe for review.  Finally, there were compelling reasons to timely resolve the underlying issues relating to ownership of the Anchor Point home.  Given the above circumstances, we conclude that it was not an abuse of discretion to deny Nelson's request for a temporary stay of proceedings.

G.     **The Superior Court Did Not Abuse Its Discretion When It Granted Amanda's Motion For Attorney's Fees.**

In April 2009, Amanda filed a motion for attorney's fees, which the superior court granted in August 2009.  The superior court awarded Amanda $5,000 in fees.  Nelson contends that the superior court erred "[w]hen it entered a judgment that [Nelson] pay [Amanda] attorneys fees and costs incurred for administering the underlying probate estate."

---

[56]     *Beck v. Commc'ns Workers of Am.*, 468 F. Supp. 87, 91 (D. Md. 1979); *Cutler Assocs. v. Merrill Trust Co.*, 395 A.2d 453, 456 (Me. 1978) (holding that a stay is "not a matter of right but a matter of grace"); *Clark's Fork Reclamation Dist. No. 2069 v. Johns*, 66 Cal. Rptr. 370, 373 (Cal. Ct. App. 1968).

[57]     *Law Project for Psychiatric Rights, Inc. v. State*, 239 P.3d 1252, 1255 (Alaska 2010) (citing *Armstrong v. Tanaka*, 228 P.3d 79, 82 (Alaska 2010); *Stone v. Int'l Marine Carriers, Inc.*, 918 P.2d 551, 554 (Alaska 1996)).

In *Crittell v. Bingo*[58] we confirmed that Alaska Civil Rule 82 governs the award of attorney's fees in probate proceedings unless a specific provision of the Probate Rules applies.[59] Because no provision of the Probate Rules applies here, Rule 82 governs the present case.

### 1. Amanda was the prevailing party.

Alaska Civil Rule 82 provides that "[e]xcept as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees . . . ." "A prevailing party under Alaska Civil Rule 82 is a party who has successfully prosecuted or defended against the action, the one who is successful on the main issue of the action and in whose favor the decision or verdict is rendered and the judgment entered."[60] Generally, "the party who obtains an affirmative recovery is considered prevailing,"[61] but "we do not require a party to prevail on all the issues in the case to be a prevailing party."[62]

In an August 2009 order granting the personal representative's motion for attorney's fees, the superior court concluded that "[t]he 'main issue' in this case was the validity of the deed of trust against the [Anchor Point home] purportedly held by Dianne

---

[58]   83 P.3d 532 (Alaska 2004).

[59]   *Id.* at 535-36; *see also* Alaska R. Prob. P. 1(e) ("Where no specific procedure is prescribed by these rules, the court may proceed in any lawful manner, including application of the Civil and Evidence Rules . . . .").

[60]   *Alaska Ctr. for the Env't v. State*, 940 P.2d 916, 921 (Alaska 1997) (quoting *Adoption of V.M.C.*, 528 P.2d 788, 795 n.14 (Alaska 1974)) (internal quotation marks omitted).

[61]   *Id.* (citing *Hillman v. Nationwide Mut. Fire Ins. Co.*, 855 P.2d 1321, 1327-28 (Alaska 1993)).

[62]   *Id.* (citing *Day v. Moore*, 771 P.2d 436, 437 (Alaska 1989)).

Nelson as trustee of the Eagle's Nest Irrevocable Family Trust." Because Amanda prevailed on this issue, the superior court determined that she was the prevailing party and was entitled to an award of attorney's fees.

We agree that Nelson's deed of trust is the main issue in this case. The deed of trust was the origin of Nelson's involvement with the probate of Joseph's estate and is the basis on which Nelson remains an interested party in the present proceedings. Moreover, the deed of trust is the fundamental inquiry in resolving Richardson's and Schoenstein's interests, respectively, in the Anchor Point home. We therefore affirm the superior court's determination that Amanda is the prevailing party.

### 2. The superior court did not abuse its discretion when it awarded Amanda enhanced attorney's fees.

Civil Rules 82(b)(1) and (2) provide percentage formulas on which a court is to determine reasonable attorney's fees.[63] Where the prevailing party recovered a money judgment, Rule 82(b)(1) applies. In cases in which the prevailing party recovered no money judgment, such as the present case, Rule 82(b)(2) provides that "the court shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred." Hence, under the general provision of Rule 82(b)(2), Amanda should recover 20% of her "actual attorney's fees which were necessarily incurred."

Civil Rule 82(b)(3) allows a court to vary from the above calculations if, upon consideration of certain enumerated factors, the court determines a variation is warranted. Under this rule, the court must consider the following factors and must explain the reasons for any variation:

(A) the complexity of the litigation;

---

[63] Alaska R. Civ. P. 82(b)(1)-(2).

(B) the length of trial;

(C) the reasonableness of the attorneys' hourly rates and the number of hours expended;

(D) the reasonableness of the number of attorneys used;

(E) the attorneys' efforts to minimize fees;

(F) the reasonableness of the claims and defenses pursued by each side;

(G) vexatious or bad faith conduct;

(H) the relationship between the amount of work performed and the significance of the matters at stake;

(I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;

(J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and

(K) other equitable factors deemed relevant.

In its August 2009 order granting the personal representative's motion for attorney's fees, the superior court determined that it was necessary to vary the standard fee under Civil Rule 82(b)(2) and identified several of the Rule 82(b)(3) factors, including: (1) the complexity of the litigation; (2) vexatious or bad faith conduct; and (3) additional work occasioned by Nelson's "flurry of legal motions, requests and orders." The superior court then found that 50% of Amanda's fees were "reasonably attributed to litigating claims involving . . . Nelson and her trust" and awarded Amanda $5,000 in fees.

The superior court did not abuse its discretion when it awarded Amanda enhanced attorney's fees. Nelson engaged in vexatious and bad faith conduct. Most

significantly, Nelson proceeded with a foreclosure sale of the Anchor Point home in direct violation of the superior court's order staying the sale. The foreclosure sale to Richardson increased the complexity of the case and required significant additional legal work by Amanda to undo the consequences of Nelson's actions.

Because Nelson's actions constituted vexatious and bad faith conduct, we conclude that the superior court did not abuse its discretion in determining that 50% of Amanda's fees could reasonably be attributed to Nelson's actions. Accordingly, we affirm the superior court's award of $5,000 in fees to Amanda.

### 3. Attorney's fees should be awarded against both Nelson and the Eagle's Nest Irrevocable Family Trust.

Alaska Statute 13.26.095(b) provides that, "[s]ubject to AS 13.36.105-13.36.220, a trustee is personally liable for obligations arising from ownership or control of property of the trust estate . . . ." In its August 2009 order granting the personal representative's motion for attorney's fees, the superior court found that both Nelson and the Eagle's Nest Irrevocable Family Trust were personally at fault under AS 13.36.095.[64] The superior court stated that "[t]his fee award and any companion award of costs under Civil Rule 79, constitute an obligation arising from a dispute over ownership or control of real property against which Eagle's Nest Irrevocable Family Trust . . . asserted a legal interest; from a note and deed of trust agreement entered into by Dianne Nelson, as trustee of said trust estate; and from Dianne Nelson's misconduct during the course of

---

[64] In its order awarding attorney's fees, the superior court assumed that the Eagle's Nest Irrevocable Family Trust and the Eagle's Nest - Kasilof Irrevocable Family Trust were one and the same trust. In her opening brief on appeal, however, Nelson asserts that these are two separate trusts. Assuming that the Eagle's Nest - Kasilof Irrevocable Family Trust is indeed a separate trust, any award should be entered only against Nelson and the Eagle's Nest Irrevocable Family Trust.

such dispute." The nature of the relationship between Nelson and the Eagle's Nest trust is unclear from the record. But Nelson is the only identified trustee of the trust, and, although the deed of trust was held by the trust, Nelson seemingly has exercised full authority over actions involving the Anchor Point home. Based on the above, we affirm the superior court's award of attorney's fees as against both Nelson and the Eagle's Nest Irrevocable Family Trust.

**H.    The Superior Court Did Not Err When It Approved Amanda's Plan To Dispose Of Abandoned Personal Property.**

In August 2009, the superior court entered an order approving Amanda's plan to follow the protocol established in AS 34.03.260 to dispose of abandoned property remaining at the Anchor Point home. Nelson contends that the court erred in issuing "a Writ of Assistance that allowed [the] taking by . . . [Amanda] of over $12,000 of personal property of Appellants and others that was being stored at the Property at the time the Writ was issued."

Alaska Statute 34.03.260 provides a protocol for a landlord to follow in disposing of abandoned personal property left by a former tenant upon termination of a tenancy. A "tenant" is defined as "a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others."[65] Alaska Statue 34.03.260 does not by its explicit terms pertain to abandoned personal property left by a non-tenant.

In regards to abandoned personal property left by a former tenant, AS 34.03.260 provides that a landlord may

> (1) give notice to the tenant demanding that the property be removed within the dates set out in the notice but not less than 15 days after delivery or mailing of the notice, and that if the property is not removed within the time specified, the property may be sold; if the property is not removed within

---

[65]    AS 34.03.360(22).

the time specified in the notice, the landlord may sell the property at a public sale; the landlord may dispose of perishable commodities in any manner the landlord considers fit;

(2) if the tenant has left personal property that is reasonably determined by the landlord to be valueless or of such little value that the cost of storing and conducting a public sale would probably exceed the amount that would be realized from the sale, the landlord may notify the tenant that the property be removed within the date specified in the notice but not less than 15 days after delivery or mailing of the notice, and that if the property is not removed within the time specified, the landlord intends to destroy or otherwise dispose of the property; if the property is not removed within the time specified in the notice, the landlord may destroy or otherwise dispose of the property; in the notice, the landlord shall indicate an election to sell certain items of the tenant's personal property at public sale and to destroy or otherwise dispose of the remainder.

Amanda regained possession of the Anchor Point home sometime in late April or early May 2009. Upon regaining possession, she discovered personal property that, upon inspection, appeared to belong to Nelson, Richardson, or possibly Schoenstein. She filed a Motion for Approval of Personal Representative's Plan to Dispose of Abandoned Personal Property, seeking to adopt the protocol outlined in AS 34.03.260 to dispose of the abandoned personal property.[66]

---

[66] The record provides little information regarding the precise factual context surrounding the issue of abandoned personal property, and the record itself does not unequivocally establish whether the remaining personal property actually belonged to Nelson, Richardson, or Schoenstein. But Nelson's opening brief appears to resolve any doubt that the personal property belonged to one of them. Nelson's brief states: "The court issued an Order in August 2009 [requiring] that [Amanda] notify everyone to come get their stuff, but she disobeyed this order and refused to allow [Nelson] to get her

(continued...)

Nelson, Richardson, and Schoenstein, to the extent that any of them entered the Anchor Point home and left personal property in spring 2009, were not "tenants" as defined in AS 34.03.360. In March 2009, the superior court invalidated and vacated Nelson's deed of trust and the trustee's deed purporting to convey the property to Richardson. In April 2009, the superior court issued a writ of assistance, ordering any peace officer of the State of Alaska to turn over possession of the Anchor Point home to Amanda. Accordingly, neither Nelson, Richardson, nor Shoenstein had any right to occupy the Anchor Point home to the exclusion of others in spring 2009.

We conclude that the superior court did not err when it allowed Amanda to adopt the protocol set forth in AS 34.03.260 to dispose of abandoned property left at the Anchor Point home. Although AS 34.03.260 does not by its terms apply to abandoned personal property left by non-tenants, we are confident that this adopted procedure provided sufficient process to Nelson, Richardson, and Schoenstein — none of whom had a legal right to occupy the Anchor Point home. Because Nelson, Richardson, and Schoenstein were afforded significant time and process to recover any abandoned personal property that remained at the Anchor Point home, we affirm the superior court's decision to adopt AS 34.03.260.

I.    **The Superior Court Did Not Otherwise Err In Resolving The Present Case.**

---

**66**    (...continued)
furniture or some of [. . . Richardson's] and [Schoenstein's] tenants['] belongings as well in direct contempt of that August 2009 Order." Nelson's brief provides no additional factual assertions, however, and it is unclear whether Nelson, Richardson, or Schoenstein ever actually attempted to retrieve their personal property, as Nelson's brief implies, or whether Amanda somehow prevented them from retrieving their property. There also is no conclusive evidence whether Amanda actually ever carried out the protocol as set forth in AS 34.03.260, and the current status of the personal property is unclear.

Nelson and Richardson's brief makes numerous other allegations. Nelson contends, among many other claims, that: (1) her "contractual, property, privacy, and other Constitutionally-protected rights" were deprived without adequate due process; (2) the superior court participated in "suppression of evidence," "obstruction of justice," "gave preference to counsel for [Amanda]," and "prejudiced and biased [Nelson and Richardson's] position"; (3) the superior court allowed Amanda "to abuse her position [as personal representative] for her own personal agendas and financial gain"; (4) the judge "participated in and/or allowed deliberate abuse of the judicial processes for the personal financial gain of [Amanda] and [her] counsel"; and (5) the court allowed "disabled, elderly, indigent and unrepresented litigants to be taken advantage of by unscrupulous counsel and their clients." These claims are accompanied by no factual context or legal argument, and we find no basis for them in the record.

## V. CONCLUSION

We AFFIRM the decision of the superior court in all respects.